UNITED STATES

v.

Sergeant Ronald M. DETTINGER, FR 552–98–2919 Miscellaneous Docket No. 78–3 and Airman Basic Thomas C. Wingard, FR 192–42–781 Miscellaneous Docket No. 78–4 United States Air Force.

U. S. Air Force Court of Military Review.

13 Sept. 1978.

**506**

Appellate Counsel for the Accused as to both Accused: Captain Wade B. Morrison and Colonel B. Ellis Phillips.

Appellate Counsel for the United States as to both Accused: Captain Robert T. Mounts and Colonel Julius C. Ullerich, Jr.

Before EARLY, HERMAN, ORSER and ARROWOOD, Appellate Military Judges.

## DECISION

EARLY, Chief Judge:

Both of these cases come to us on petition by the Government for extraordinary relief to reverse the orders of two military judges dismissing the charges against the respective accuseds. Since the facts upon which the judges' actions were taken are similar, and since the two cases were orally argued together, we are combining them into one decision.

In each case, at a pretrial hearing conducted in accordance with Article 39(a), Uniform Code of Military Justice, 10 U.S.C. § 839(a), the defense counsel moved to dismiss the charges against the accused on the ground that delays in preferral of charges had violated certain provisions of Air Force Manual 111–1, Military Justice Guide, 8 October 1976 (Change 2), and that those violations were the result of a deliberate command policy to delay preferral of charges so as to place the command in a better position in accounting for pretrial delays relative to other major commands. In neither case was the issue of speedy trial considered determinative, and there was no evidence of any specific prejudice suffered by the accused placed before the trial judge.[1]

In *Dettinger*, the judge stated:

---

1. In *Dettinger*, the alleged offenses occurred at RAF Lakenheath, United Kingdom, on 11 February 1978, and charges were preferred on 3 May 1978. During the interim period of 81 days, there was an investigation of the incident by the Air Force Office of Special Investigations which was completed by approximately 2 March 1978, and the accused underwent a 28 day alcohol rehabilitation program and psychiatric examination at Weisbaden Air Base, Germany. The accused returned from Weisbaden on 17 April 1978. The base staff judge advocate testified that the time between 17 April and 3 May was spent preparing charges, determining the prospective court members and lining up a suitable Article 32, Uniform Code of Military Justice, 10 U.S.C. § 832, officer. He also testified that the accused's commander (a medical doctor) recommended that it would be in the best interests of the accused to complete the alcohol program before charges were preferred.

The factual background in *Wingard* is more complicated. The alleged offenses which make up the instant charges were committed in May 1977, but the forensic evidence was not received until August 1977. Charges were preferred on 15 August 1977. The charges here were part of other charges which were referred to trial in October 1977, and were returned to the convening authority by the military judge for reinvestigation under Article 32, supra. Trial continued on the remaining charges, and Wingard was convicted and confined. The severed charges were repreferred in January 1978, and an Article 32 investigation began thereaft-

The court has no question but what that regulation (AFM 111–1) sets forth the standard that is expected to be complied with. We do note that that standard does provide for some exceptions. I'm singularly unimpressed with the reason for nonpreferral, of preparing to process the case or having to go to another base for a 32 officer to investigate the charges, to get someone to fit it into his schedule. It seems to me that one of the basic purposes in getting the charges formally prepared is so that both sides, the Government and the accused, would have an opportunity to begin their formal decision making. That there would be no advantage, no pressing need to prefer charges, was another statement, that there would be no advantage to preferring charges. The only purpose of that statement, that there would be no advantage would be, that there would be no advantage to the Government. There certainly could be an advantage to the accused. However, I also perceive that there is some unusual involvement in this particular case, the interests of (the accused's commander), his apparent personal interest in the resolution of this matter, both legally and medically. It also appears that there was an early involvement of defense counsel in the representation of the accused in relation to the charges, both legally and medically, apparently.

\*      \*      \*      \*      \*      \*

As I said earlier, there are factors that weigh on both sides of this question, some of which I enumerated. I don't see the issue before the court as that of a speedy trial issue, am I correct in that perception?

IDC: That's correct.

MJ: But it's a question of whether the Government has met its obligation to abide by its own regulations in ac-

cordance with the doctrine announced in *United States ex rel. Accardi v. Shaughnessy,* 347 US 260 [,74 S.Ct. 499, 98 L.Ed. 681] . . ., and recent COMA cases of *United States v. Russo* . . . and *United States v. Dunks,* . . . cited by defense counsel. . . . I grant your motion for those charges and specifications.

In *Wingard,* the judge stated:

Well, if they hadn't preferred in January, counsel, I could accept that argument, but they did for reasons that at this point are still unknown to me. I'm going to grant the defense motion to dismiss all charges and specifications. I'm not doing it on speedy trial grounds. I'm satisfied that paragraph 1–3 of AFM 111–1 requires prompt disposition of all military justice matters; that is subparagraph a. I'm further satisfied that under subparagraph b the charges preferred in January of this year were not preferred as soon as possible. This is giving the Government the benefit of the time period between 13 October and the date of authentication in November. Nevertheless, I am satisfied that the provisions of paragraph 1–3, AFM 111–1, are intended to protect the rights of individuals. These provisions, both under a and b, were violated by the Air Force. The remedy under *Russo* is dismissal.

The specific language of AFM 111–1 considered pertinent to the judges' dismissal is found in subparagraphs 1–3a and b:

a. Consistent with justice and fairness to the parties concerned, expeditious processing of courts-martial is required by law and Air Force policy. It is essential that applicable time standards established by statute and by applicable case law be met in Air Force practice. Moreover, it is Air Force policy that all military justice

er. The convening authority's action on the other charges was taken in December 1977. The first Article 32 investigation of the severed charges was returned for reinvestigation because of disqualification of the Article 32 officer.

The "repreferral" of charges in January 1978 has no particular significance since the charges were never dismissed, but merely sent back for further investigation. Neither date is relevant to our decision here.

procedures be accomplished as quickly as feasible, even though statute and case law might permit greater delay.

(1) Prompt disposition of all justice matters is an absolute prerequisite to an effective military justice program; undue delay may result in the nonavailability of vital evidence or summary dismissal of the charges against an accused without regard to the basic issue of his guilt or innocence. (UCMJ, Articles 10, 33, 98, 10 U.S.C. §§ 810, 833, 898; MCM, 1969 (Rev.), paras. 22, 25, 68i, 177, 215e). Certain court decisions have established standards, particularly as to service members who are confined before trial or action, which may require dismissal of charges if they are not met. (*United States v. Burton*, 21 U.S.C.M.A. 112, 44 C.M.R. 166 (1971); *United States v. Marshall*, 22 U.S.C.M.A. 431, 47 C.M.R. 409 (1973); *Dunlap v. Convening Authority*, 23 U.S.C.M.A. 135, 48 C.M.R. 751 (1974); cf. *United States v. Goode*, 23 U.S.C.M.A. 367, 50 C.M.R. 1, 1 M.J. 3 (1975)). In managing military justice matters, it is essential that the risk of dismissal of an otherwise meritorious case on the basis of these precedents be avoided.

(2) Air Force time standards are separate from the overriding strictures noted in (1); they address the proposition that all military justice matters must move expeditiously regardless of whether the accused is in confinement. The amount of time required to process each case depends on all factors involved in that particular case; thus, in some cases compliance with given time standards will be impossible or impracticable. Nevertheless, these are reasonable standards which may normally be observed without sacrificing thoroughness and fairness for speed. Subparagraph b establishes the time standards for processing courts-martial within the Air Force. Completion of each stage of a court-martial within these standards should be the rule rather than the exception.

2. The preamble to the Manual provides:
   This manual has been prepared to assist judge advocate officers and other Air Force personnel in the administration of military jus-

b. Charges should be preferred as soon as possible after it has been ascertained that an offense is of such serious nature as to warrant disposition by trial by court-martial; normally, within three days. The following time standards should be observed:

\* \* \* \* \* \*

(4) General Courts-Martial:

|  | Cumulative Elapsed Days |
|---|---|
| Accused restricted, arrested, or confined by military authority | 0* |
| Charges preferred (date of affidavit) | 3 |

\* \* \* \* \* \*

*When accused is not restricted, arrested, or confined, or is restricted or confined under sentence of court-martial or restricted or in correctional custody as non-judicial punishment when the charges are preferred, use the date the charges are preferred (affidavit) as the zero date.

The paragraph goes on to require explanation of delays in excess of the given time standards on the chronology sheet in the record of trial.[2]

At the outset, we observe that we can find no case where delay in preferral of charges against an accused who is not in pretrial confinement or some form of restraint has been held to justify dismissal of the charges in the absence of some specified prejudice to the accused's rights. In *United States v. Green*, 29 C.M.R. 868, 871 (A.F.B.R.1960), our predecessor Board of Review held:

A period before either confinement or the preferring of charges is not included within that for which the Government must account. . . . Some of the delay . . . may have been unnecessary, but a substantial portion of the delay was occasioned by requests of the trial defense counsel for a psychiatric examination of the accused and for the presence of the accused's wife to testify as a witness.

\* \* \* \* \* \*

tice. It contains Department of the Air Force implementation of the Manual for Courts-Martial, 1969 (Revised Edition).

The difficulties of scheduling this particular trial in an overseas area, where persons concerned with the hearing came from distant places and stations, are readily apparent. Having evaluated these and all other circumstances of record, we are satisfied that the delay by the Government in bringing the accused to trial was not unreasonable as a matter of law. Consequently, the law officer did not abuse his discretion in denying the motion of the trial defense counsel to dismiss for "lack of diligent prosecution".[3]

The case of *United States v. Marion*, 404 U.S. 307, 92 S.Ct. 455, 30 L.Ed.2d 468 (1971) is also apposite. There a delay of some 38 months occurred between the commission of the various offenses and indictment by the grand jury. The federal district court dismissed the indictment for lack of speedy prosecution on the stated ground that the defense of the case was "bound to have been seriously prejudiced by the delay of at least some three years in bringing the prosecution . . .." 404 U.S. at 310, 92 S.Ct. at 458. Upon direct appeal, the Supreme Court held that neither the Sixth Amendment nor Rule 48 of the Federal Rules of Criminal Procedure justified such action, and that speedy trial guarantees are applicable only after a person has been accused of a crime. The Court stated:

No opinions of this Court intimate support for appellee's thesis, and the courts of appeals that have considered the question in constitutional terms have never reversed a conviction or dismissed an indictment solely on the basis of the Sixth Amendment's speedy trial provision where only preindictment delay was involved.

\* \* \* \* \* \*

Inordinate delay between arrest, indictment, and trial may impair a defendant's ability to present an effective defense.

But the major evils protected against by the speedy trial guarantee exist quite apart from actual or possible prejudice to an accused's defense. To legally arrest and detain, the Government must assert probable cause to believe the arrestee has committed a crime. Arrest is a public act that may seriously interfere with the defendant's liberty, whether he is free on bail or not, and that may disrupt his employment, drain his financial resources, curtail his associations, subject him to public obloquy, and create anxiety in him, his family and his friends. . . . So viewed, it is readily understandable that it is either a formal indictment or information or else the actual restraints imposed by arrest and holding to answer a criminal charge that engage the particular protections of the speedy trial provisions of the Sixth Amendment. . . . [W]e decline to extend the reach of the amendment to the period prior to arrest. Until this event occurs, a citizen suffers no restraints on his liberty and is not the subject of public accusation: his situation does not compare with that of a defendant who has been arrested and held to answer. Passage of time, whether before or after arrest, may impair memories, cause evidence to be lost, deprive the defendant of witnesses, and otherwise interfere with his ability to defend himself. But this possibility of prejudice at trial is not itself sufficient reason to wrench the Sixth Amendment from its proper context. Possible prejudice is inherent in any delay, however, short; it may also weaken the Government's case.

404 U.S. at 315, 320–22, 92 S.Ct. at 460, 463–64 (footnotes omitted).

█ It is clear that mere delay in preferring charges, in and of itself, and in the absence of some specific prejudice, does not give rise to a right in the accused justifying dismissal of the charges.[4] Therefore, unless

---

3. The issue there was lack of speedy trial. There was a delay of some five and a half months between the accused's release from pretrial confinement and the preferral of charges.

4. See 404 U.S. 315, n. 8, 92 S.Ct. 455 and cases cited therein. The customary relief for delay in preferral of charges is the statute of limitations which bars stale actions. See Article 43, Code,

such a right is otherwise conferred by law, the actions of the military judges in dismissing the charges exceeds their authority.

■ In our some 75 years of cumulative experience as Air Force judge advocates, and as appellate judges, we have always considered the language of AFM 111–1, cited above, to be hortatory only and that violation of the so-called "time standards" required explanation for administrative management purposes only. *United States v. Phillips*, 18 U.S.C.M.A. 230, 39 C.M.R. 230 (1969); *United States v. Ortiz*, 20 U.S.C.M.A. 21, 42 C.M.R. 213, 216 (1970). We have never believed that pre-preferral delays not of the *Burton-Marshall*[5] nature, constitute grounds for dismissal of charges. In spite of the inartful language in subparagraph (1) of AFM 111–1,[6] cf. *United States v. Snyder*, 48 C.M.R. 163 (A.F.C.M.R.1973), we believe that dismissal can lie only for lack of speedy preferral of charges when the accused is in pretrial confinement or its equivalent. We therefore find that AFM 111–1, supra, is not intended to benefit an accused. The above-quoted language is designed as a management tool for judge advocates to gauge the progress of their own processing of cases and does not confer any rights upon an accused. As such, the Manual provisions are not capable of being violated in the sense of *Service v. Dulles*, 354 U.S. 363, 77 S.Ct. 1152, 1 L.Ed.2d 1403 (1957); *United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260, 74 S.Ct. 499, 98 L.Ed. 681 (1954) or *United States v. Russo*, 1 M.J. 134 (C.M.A.1976).[7]

Based on our examination of the applicable law and the facts of the two instant cases, we hold that dismissal of the charges for the reasons stated by the military judges was an improper exercise of their judicial discretion and was error as a matter of law.

Having so held, we must still determine the ultimate question of our power to correct such errors. Prior to the decision in *United States v. Ware*, 1 M.J. 282 (C.M.A. 1976), it was settled law that the convening authority had the power to overrule a decision of a military judge dismissing a specification on motion where the ruling did not amount to a finding of not guilty. See Manual for Courts-Martial, 1969 (Rev.), paragraph 67f; *United States v. Boehm*, 17 U.S.C.M.A. 530, 38 C.M.R. 328 (1968), and cases cited therein. However, in *Ware*, the Court of Military Appeals held that paragraph 67f, Manual, supra, was an unlawful extension of Article 62(a), Code 10 U.S.C. § 862(a), supra, and that the Article merely authorized the convening authority to direct the military judge to *reconsider* his ruling without directory implications. The Court stated:

> It appears to us to be inherently inconsistent with the action of Congress in creating an independent judicial structure in the military, to strain the clear meaning of Article 62(a) to the point of permitting the *lay* convening authority to *reverse* a ruling of *law* by the trial judge. We decline to do so.

1 M.J. at 287 (footnotes omitted).

Here, in both cases, the convening authority returned the records of trial to the military judges requesting reconsideration of their rulings. After briefs were filed,

---

10 U.S.C. § 843, supra; Manual for Courts-Martial, 1969 (Rev.) paragraph 74h. In addition, Article 98(1) provides a remedy against any person who is responsible for "unnecessary delay in the disposition of any case."

5. *United States v. Burton*, 21 U.S.C.M.A. 112, 44 C.M.R. 166 (1971); *United States v. Marshall*, 22 U.S.C.M.A. 431, 47 C.M.R. 409 (1973).

6. The predecessor of subparagraph (1) reads: "Noncompliance may result in failure of prosecution for the offenses or other grave consequences." AFM 111–1, 17 July 1969. Subsequent changes in 1972 and 1973 refer to *Burton*, supra, situations.

7. We are aware that certain commands put undue emphasis on compliance with these "time standards" as a means of enhancing their competitive standing with other commands. We need not here decide whether such emphasis might, in a given instance, elevate these advisory standards to a mandatory level since the *evidence of record* in the cases now before us does not establish such a situation.

both judges adhered to their earlier rulings with written opinions.[8]

The decision in *Ware,* supra, created a void in military law; the supervisory power of the convening authority to correct erroneous rulings by a trial judge was removed.[9] "Such a void is unhealthy from a judicial administration standpoint." *United States v. Rowel,* 1 M.J. 289, 291 (C.M.A. 1976), concurring opinion of Chief Judge Fletcher.

We believe that Congress intended the Uniform Code of Military Justice to be unitary and self-contained; that is, it was meant to 'nclude all the checks and balances necessary to function as a separate legal system. See Article 76, 10 U.S.C. § 876. Thus, we believe that the Code envisioned supervisory control over each tier of the military justice process. We cannot believe the decision in *Ware,* supra, makes the decisions of military judges absolute and unreviewable. Unrestrained, unreviewable actions are foreign to our political philosophy. Judicial absolutism is no better than command absolutism; every system must have its checks and balances, else the problem of the errant judge merely substitutes for the problem of the errant commander.

As we read *Ware,* supra, what the Court of Military Appeals found most offensive was the substitution of lay judgment for judicial judgment in an area of pure law. Thus, *Ware* merely removed the convening authority from the review process of legal questions; it did not negate the exercise of review authority by a judicial body: the power to restrain an abuse of discretion was not excised, but its exercise was merely restricted from a lay convening authority.[10] Thus, the power must still exist in this or some higher Court.

▮ As the highest Air Force Court, through our reviews we exercise supervisory authority over the actions of Air Force trial judges, and where as here, an injustice has been done, we have the inherent power to correct it.

The Court has never had occasion to consider its powers under the All Writs Act, 28 U.S.C. § 1651. However, it is now clear that Courts of Military Review have such authority. See *Kelly v. United States,* 1 M.J. 172 (C.M.A.1975), wherein the Court of Military Appeals directed the Army Court of Military Review to exercise its extraordi-

8. See Appendices 1 and 2, infra. The military judge in *Dettinger* expanded on his trial ruling by means of a telephone conversation with counsel preserved by a memorandum for record prior to the reconsideration. Therein, he stated:

.   .   .   [The] court's ruling on Defense's Motion to Dismiss was founded, in part, on inferences from record which, coupled with experience of the military judge within this Judiciary Circuit, provided an understanding that USAFE has fostered a rule or policy throughout this circuit which in effect penalizes preferral of charges without unnecessary delay by encouraging delay in preferral of charges for the reason of creating a better statistical record of compliance with time standards, compliance with which is comparatively reported from commands within USAF and USAFE and that such rule or policy affected preferral of the charges in this case.

9. The Legal and Legislative Basis for the Manual for Courts-Martial, 1951 (19 April 1951) states in pertinent part:

67f *Effect of ruling on motion.*—This paragraph is about the same as 64f, MCM, 1949.

Briefly it provides that the court may continue with the trial if, after disposing of all motions, there remains before the court any specification which was not stricken or dismissed. If the court cannot proceed further because of its ruling on a motion it will submit its record so far as had to the convening authority. The convening authority may, if he disagrees with the court, return it for reconsideration of any ruling except one which amounts to a finding of not guilty. This provision was in MCM 1949 and it now has statutory recognition in Article 62a. If the matter as to which the court and the convening authority are in disagreement is a question of law .   .   .   the court will accede to the views of the convening authority; if the matter is one of fact, the court will exercise its sound discretion. If the convening authority can cure the defect which was the basis of the ruling, he may return the record after effecting a cure, with instructions to proceed with the trial.

10. See Cook, Courts-Martial: The Third System in American Criminal Law, So.Ill, Univ.L.J. No. 1 at 27 (1978, reprint).

nary writ power.[11] The question remains, however, as to the propriety of the exercise of such power in the instant situations.[12]

■ The use of extraordinary powers is limited to "really extraordinary causes," *Ex Parte Fahey,* 332 U.S. 258, 260, 67 S.Ct. 1558, 91 L.Ed. 2041 (1957), and should not be used save in those exceptional circumstances where appellate review cannot cure the error. *Cobbledick v. United States,* 309 U.S. 323, 60 S.Ct. 540, 84 L.Ed. 783 (1930).[13] Here, there is no possibility of appeal by the Government, and the injustice is obvious.[14]

■ The extraordinary writ of mandamus has been used by the federal courts "to confine an inferior court to a lawful exercise of its prescribed jurisdiction or to compel it to exercise its authority when it is its duty to do so." *Roche v. Evaporated Milk Ass'n,* 319 U.S. 21, 26, 63 S.Ct. 938, 941, 87 L.Ed. 1185 (1943). Only an exceptional circumstance amounting to a judicial "usurpa-

tion of power" will permit its exercise. *Schlagenhauf v. Holder,* 379 U.S. 104, 85 S.Ct. 234, 13 L.Ed.2d 152 (1964); *De Beers Consol. Mines, Ltd. v. United States,* 325 U.S. 212, 217, 65 S.Ct. 1130, 89 L.Ed. 1566 (1945); *Will v. United States,* 389 U.S. 90, 88 S.Ct. 269, 19 L.Ed.2d 305 (1967). The writ will issue only in aid of the exercise of appellate jurisdiction, *Roche v. Evaporated Milk Ass'n,* supra, and, in criminal cases, only to review interlocutory orders which effectively terminate prosecution. *Will v. United States,* supra.[15]

■ Applying these general principles to the cases at hand, we hold:

1. The decisions sought to be reserved go beyond the facts and law of record before the judges and amount to a usurpation of power;

2. The exercise of this Court's appellate jurisdiction is forestalled by said decisions;

**11.** We harbor no doubt that the Court of Military Appeals has the power to issue the writ requested here. See *United States v. Kelly,* infra, and cases cited therein; *McPhail v. United States,* 1 M.J. 457 (C.M.A.1976). However, to restrict the exercise of such power to that Court would cause two significant problems: that Court would become the Court of first instance in all such matters which would inevitably lead to delays and an overcrowded docket; and, in matters such as these, the Court would not have the expertise in peculiar service practices and procedures as would a service appellate court.

**12.** *Roche v. Evaporated Milk Ass'n,* 319 U.S. 21, 63 S.Ct. 938, 87 L.Ed. 1185 (1943); Supervisory and Advisory Mandamus under the All Writs Act, 86 Harv.L.Rev. 595 (1973) and cases cited therein; Wacker, The "Unreviewable" Court-Martial Conviction; Supervisory Relief under the All Writs Act from the United States Court of Military Appeals, 10 Harv.Civ.Rights-Civ.Lib.L.Rev. 33 (1975).

**13.** "[Prerogative] writs may almost be viewed as self-correcting adjustment devices built into the judicial system. It was no doubt this sense that appeals and extraordinary writs are procedural tools of wholly different natures—the former protecting primarily the interests of particular litigants; the latter protecting first the interests of the judicial system as a whole— that was responsible for the fact that from the time of the First Judiciary Act onward both the Supreme Court and the courts of appeals felt free to issue prerogative writs in criminal cases

with no thought that the practice might have violated, or raised any question pertinent to, the principle that appeals by the Government in criminal cases were allowed only where there was express statutory provision for them." Supervisory and Advisory Mandamus under the All Writs Act, supra, at 626.

**14.** Appeals by the Government in criminal cases are permitted only where there is specific statutory authority and only within the narrow limits statutorily granted. *Carroll v. United States,* 354 U.S. 394, 77 S.Ct. 1332, 1 L.Ed.2d 1442 (1957); *Fong Foo v. United States,* 369 U.S. 141, 82 S.Ct. 671, 7 L.Ed.2d 629 (1962). The Code contains no provision for appeals by the Government except as provided in Article 62(a), supra.

**15.** Both counsel cite *Will v. United States* in support of their respective assertions. Shorn of its dicta, *Will* stands for two propositions: the use of an extraordinary writ at the instance of the Government in criminal cases will be strictly construed; and, its issuance by an intermediate appellate court must be accompanied by a "reasoned justification." The latter seems to be the real *ratio decidendi,* as the Court said:

A mandamus from the blue without rationale is tantamount to the abdication of the very expository and supervisory functions of an appellate court upon which the Government rests its attempt to justify the action below. 389 U.S. at 107, 88 S.Ct. at 280.

3. These decisions have created erroneous precedents within the judicial circuit bringing trial of cases to a virtual standstill;[16] and,

4. There is no way these errors may be corrected except through the exercise of our extraordinary powers.

We therefore hold that these are proper situations for the exercise of our extraordinary powers under the All Writs Act, supra.

■ The form our action must take gives us pause.[17] In the federal system the writ customarily used is "in the nature of mandamus." Such a writ is directed against a particular judge confining him to the lawful exercise of his jurisdiction or compelling him to exercise his authority when it is his duty to do so. *Roche v. Evaporated Milk Ass'n, supra.* However, in the military system, there is no continuing jurisdiction of the military judge; he exists only when there is a viable court-martial order. Here, the convening authority has taken action on each case by publishing a final order. Thus, it is presently impossible for this Court to direct an order against the specific judges. Under these circumstances, we deem it appropriate to reverse their orders and direct the convening authority to issue a new court-martial order.[18]

Accordingly, the petition of the Government for extraordinary relief is granted. The decisions of the military judges dismissing the charges in the two cases are reversed. The orders of the convening authority are set aside. The cases are remanded to the convening authority for referral to other courts-martial, or for such other disposition as is deemed appropriate.[19]

It is so ordered.

Judges HERMAN, ORSER and ARROWOOD, concur.

## DECISION ON RECONSIDERATION

The Court has reconsidered its ruling dismissing all charges and specifications in this case. Both parties have been provided an opportunity for public hearing, presentation of evidence and authority on the issues before the Court (see attachment 1, hereto). The Court has taken into consideration the authenticated record of trial, and reasonable inferences drawn therefrom, as well as the matters presented by the parties (see attachments 2 and 3, hereto) and makes the following findings:

1. After the decision was made to prefer charges, preferral in this case was delayed by decision of the Base Staff Judge Advocate. In so doing, he was acting in accordance with a well known policy of the USAFE Convening Authority. The purpose of such policy was to minimize reportable processing days. The effect of

---

**16.** See *La Buy v. Howes Leather Co.,* 352 U.S. 249, 77 S.Ct. 309, 1 L.Ed.2d 290 (1957); *Schlagenhauf v. Holder,* 379 U.S. 104, 85 S.Ct. 234, 13 L.Ed.2d 152 (1964). We judicially note that there are one, and possibly two, other cases where other judges of that circuit have granted motions for dismissal upon similar grounds. Thus, "even 'a little cloud may bring a flood's downpour' if we approve the practice here indulged." 352 U.S. at 258, 77 S.Ct. at 315.

**17.** It is not necessary that the petitioners distinguish between the various writs. *Ex parte Simons,* 247 U.S. 231, 38 S.Ct. 497, 62 L.Ed. 1094 (1918); *In re Rice,* 155 U.S. 396, 15 S.Ct. 149, 39 L.Ed. 198 (1894).

**18.** This is more akin to the writ of supervisory control used by certain state courts "where those courts are proceeding within their jurisdiction, but by a mistake of law, or willful disregard of it, are doing a gross injustice, and there is no appeal, or the remedy of appeal is inadequate." *In re Weston,* 28 Mont. 207, 72 P. 512 (1903), *State ex rel. Unbreit v. Helms,* 136 Wis. 432, 118 N.W. 158 (1908); *Ex parte State Attorney General,* 47 So. 742 (Ala.1908); see also *Fisher v. District Court,* 424 U.S. 382, 96 S.Ct. 943, 47 L.Ed.2d 106 (1976). The criteria for the issuance of such a writ is essentially the same as that for supervisory mandamus.

**19.** Our order does not direct trial by court-martial in either case; it is only intended to provide the convening authority with the power to refer the cases to trial if he so chooses. He may exercise his discretion in the same manner as he might upon the original referrals. Further, our decision here is limited to the facts presented to the respective judges which appear in the record of trial and alleged papers and in no way forecloses further consideration of the issues raised by defense counsel in either case in the event of subsequent trials.

compliance with such policy was to delay accomplishment, in this case, of "military justice procedures" for the singular purpose of enhancing the competitive standing of the USAFE command in the comparative reporting of how well various commands meet the USAF time standards or goals published in AFM 111–1.

2. The delay was not for medical reasons, as the doctor wanted the accused to know with what he was to be charged (R. 18–19).

3. The delay, even if reasonable in time, was for a purpose contrary to public policy.

4. Paragraph 1–3, AFM 111–1, clearly and unambiguously announces the rule of the Secretary of the Air Force that all military justice procedures be accomplished as quickly as feasible.

5. The Government deliberately violated the rule of the Secretary of the Air Force, in this case.

6. The delay was unnecessary.

7. Article 98, UCMJ, while an available remedy at law, provides, as do other possible remedies less severe than dismissal, an inadequate remedy under the circumstances.

IT IS THE DECISION of this Court, all matters considered, that the order dismissing the charges and specifications against SERGEANT RONALD M. DETTINGER was appropriate and the same remains the ruling of this Court.

## RULING ON RECONSIDERATION

Pursuant to a 10 July 1978 Motion for Reconsideration of the court's dismissal of all Charges and Specifications in the above-captioned general court-martial, and based upon the specific request of the United States, made through counsel and concurred in by detailed Defense Counsel, Captain Paul E. Fulbright, with the understanding and agreement of the accused, that said court-martial not be reconvened for the purpose of receiving additional evidence or hearing oral argument, this written ruling upon reconsideration shall constitute the court's final action in this case. The re-quested reconsideration has been accomplished. The court's finding of fact, discussion and conclusions of law follow.

## I. FINDINGS OF FACT

On 13 October 1977, the Charges and Specifications, herein considered, were returned by the Military Judge to the General Court-Martial Convening Authority for appropriate disposition. Such action resulted from the Military Judge's determination that the investigation of these charges had not been conducted in substantial compliance with Article 32 of the Uniform Code of Military Justice. Although the returned charges were never formally withdrawn from the original court, such Charges and Specifications, as well as numerous additional allegations, were preferred against the accused by his squadron commander on 6 January 1978. Subsequently, on 16 June 1978, only the Charges and Specifications which were returned to the Convening Authority on 13 October 1977 were referred to trial. The case was heard by this court on 23 June 1978 at Ramstein Air Base, Federal Republic of Germany.

A complete chronology of relevant facts and dates, as compiled from the record of trial and allied papers, is set out below:

| | |
|---|---|
| 13 June 1977: | Accused is placed in pre-trial confinement. |
| 12 August 1977: | Government establishes accused's complicity in the offenses subsequently referred to this court through forensic evidence. |
| 15 August 1977: | Charges which were subsequently brought before this court on 23 June 1978 are originally preferred against the accused. |
| 16 August 1977: | Accused demands a speedy trial. |
| 17 August 1977: | Release of jurisdiction under NATO/SOFA is obtained from German authorities. |
| 26 September 1977: | Accused is released from pre-trial confinement (after 106 days). |
| 6 October 1977: | Government receives statements from individuals and apparently completes its investigation into additional drug offenses which are preferred against the accused on 6 January 1978. |

13 October 1977: The Charges and Specifications preferred against the accused on 15 August 1977 are returned to the Convening Authority by the Military Judge for appropriate disposition due to inadequacies in the Article 32 investigation.

21 October 1977: Accused is convicted of some offenses at first trial and sentenced. Government makes first telephonic attempt to contact witnesses in Kleve, Germany, to inform them that their testimony regarding the offenses returned to the Convening Authority on 13 October might be needed in the future.

25 October 1977: Government telephonically informs the public prosecutor in Kleve, Germany, that his testimony might be needed in the future.

10 November 1977: Government telephonically attempts to arrange a date for German witnesses from Kleve to testify at an Article 32 hearing regarding the charges returned to the Convening Authority on 13 October.

23 November 1977: Military Judge authenticates the record of trial from accused's 21 October conviction.

14 November 1977 thru 5 January 1978: Government makes seven more telephone calls to Kleve to arrange for the availability of witnesses at the proposed Article 32 hearing.

6 January 1978: Charges that were returned to the Convening Authority on 13 October 1977, and numerous other charges, are preferred against the accused.

7 January 1978: Captain Pappas is appointed as Article 32 investigating officer.

9 January 1978: Defense counsel challenges Captain Pappas for cause due to her prior participation in a related case, and the challenge is denied.

11 March 1978: The report of investigation is forwarded to HQ USAFE/JA.

13 March 1978 thru 3 April 1978: The report is reviewed, reinvestigation is discussed, and a decision is made to appoint a new investigating officer due to Captain Pappas' disqualification.

13 March 1978: Major Ableson is appointed as investigating officer.

16 June 1978: The Charges and Specifications returned to the Convening Authority on 13 October 1977 are referred to trial by general court-martial.

23 June 1978: At trial the court dismisses all Charges and Specifications due to the Government's failure to comply with the provisions of AFM 111-1, para 1-3.

## II. DISCUSSION AND CONCLUSIONS OF LAW

Between 13 October 1977 and 6 January 1978, the Government faced only two questions: should the returned charges be reinvestigated and did the available evidence obtained on 6 October 1977 warrant preferral of charges as to these allegations? From the chronology prepared and agreed to by counsel at the 23 June 1978 proceeding (Appellate Exhibit IV), it is apparent that by 6 October 1977 the Government possessed substantial evidence regarding all possible offenses. Nonetheless, charges were not preferred against the accused until 6 January 1978.

Regarding the timely preferral of charges, AFM 111-1, para 1-3b, as it was in effect on 23 June 1978, stated in pertinent part:

Charges should be preferred as soon as possible after it has been ascertained that an offense is of such serious nature as to warrant disposition by trial by court-martial; normally, within three days. The following time standards should be observed:

It is noted that the foregoing quoted provisions were changed subsequent to the ruling in this case by an interim change to the above provision by HQ USAF/JA/JAJM msg 261630Z June 78, subject AFM 111-1, as follows:

Charges should be preferred as soon as practicable after the responsible commander decides that an offense is so serious that it warrants trial by court-martial. In processing the charges and other actions related to the case, seek to achieve the following goals to the greatest extent feasible:

Each of the above referenced provisions then refer to a "Cumulative Elapsed Days" table in subparagraph 1-3b(1) of the regulation. The table remains unchanged, is not germane to this discussion, and, therefore, is omitted.

During the 23 June 1978 proceeding individual defense counsel moved for dismissal of all Charges and Specifications based upon the Government's failure to comply with the provisions of AFM 111–1, paras 1–3a and 1–3b, in that the charges were not processed expeditiously as required by paras 1–3a(1) and paras 1–3a(2), and that the charges were not preferred in a timely manner as required by para 1–3b. (R–35–36). In ruling upon the untimely preferral issue at trial, this court ruled that the Government would not be held accountable for delay in re-preferring the original 15 August 1977 charges during the period from 13 October until 23 November 1977 when the Military Judge authenticated the first record of trial. In view of the substantial information in the hands of the Government on 13 October, including the 6 October 1977 statements regarding additional offenses, this ruling was, perhaps, overly generous to the United States. Clearly, the Government was required by regulation to process all charges expeditiously and prefer appropriate charges in a timely manner. Review of the chronology previously set out reveals that the Government initiated attempts to contact Kleve witnesses on 21 October, the date the accused was sentenced at his first trial. Furthermore, by 10 November 1977, the Government had determined that reinvestigation of the 15 August 1977 charges was warranted (see Appellate Exhibit IV), and action was taken to establish a hearing date.

Other factors bearing upon the reasonableness of the Government's actions from mid-October 1977 until 6 January 1978 must be considered. First, the merits of the Charges and Specifications returned to the Convening Authority on 13 October were never considered at the first trial. Accordingly, reinvestigation would not involve unresolved legal issues. Secondly, under the provisions of paragraph 25, Manual for Courts-Martial, United States, 1969 (Revised Ed.), the Government had an affirmative duty to dispose of the 15 August 1977 charges against the accused without unnecessary delay. Such charges could have been withdrawn by the General Court-Martial Convening Authority or returned by him to the Special Court-Martial Convening Authority with appropriate instructions as to disposition. Instead, the Charges and Specifications were re-preferred in conjunction with other allegations. At trial the Government offered no explanation regarding the re-preferral and declined to call witnesses on this or any other issue.

While it may well be that the Government was not obligated to "reprefer" the 15 August charges, this court finds that the 6 January 1978 preferral of those charges by the accused's commander was not a mere administrative convenience. This new preferral was the method selected by the Government to dispose of the original charges as is required by paragraph 25, MCM, supra. Accordingly, this court finds that the Government violated the provisions of AFM 111–1, para 1–3b, and the amended provisions thereof, by delaying preferral of said charges for over eighty days after it should have been determined that the offenses were of such a serious nature that reinvestigation was warranted.

As previously discussed, individual defense counsel also moved for dismissal on the ground that the charges against the accused were not processed expeditiously. The relevant portions of AFM 111–1, paras 1–3a, 1–3a(1) and 1–3a(2), as they were in effect on 23 June 1978, are set out below:

1–3. Time Standards:

a. Consistent with justice and fairness to the parties concerned, expeditious processing of courts-martial is required by law and Air Force policy. It is essential that applicable time standards established by statute and by applicable case law be met in Air Force practice. Moreover, it is Air Force policy that all military justice procedures be accomplished as quickly as feasible, even though statute and case law might permit greater delay.

(1) Prompt disposition of all justice matters is an absolute prerequisite to an effective military justice program; undue delay may result in the non-availability of vital evidence or summary dismissal of the charges against an accused without

regard to the basic issue of his guilt or innocence. (UCMJ, Articles 10, 33, 98; MCM, 1969 (Rev.), paras 22, 25, 68i, 177, 215e). . . . In managing military justice matters, it is essential that the risk of dismissal of an otherwise meritorious case on the basis of these precedents be avoided.

(2) Air Force time standards (goals for court-martial processing time) are separate from the overriding strictures noted in (1); they address the proposition that all military justice matters must (should) move expeditiously regardless of whether the accused is in confinement. . . .

The parenthetical references above reflect the 26 June 1978 interim changes to AFM 111–1.

In evaluating the Government's compliance or noncompliance with the policies set out above, this court finds, for the reasons previously discussed, that the Government violated AFM 111–1, paras 1–3a and 1–3a(1), during the period from 13 October 1977 until 6 January 1978, by failing to expeditiously process the 15 August 1977 charges against the accused.

Regarding this same issue, the chronology previously set out established that on 7 January 1978 Captain Pappas was appointed to reinvestigate the charges. At the first investigation hearing conducted on 9 January 1978, the investigating officer was unsuccessfully challenged for cause based upon her prior participation in a related case. On 11 March 1978, the report of investigation was forwarded to HQ USAFE/JA for review. Between 13 March and 3 April 1978, the report was reviewed, reinvestigation was discussed, and a decision was made to appoint a new investigating officer. The resulting disqualification of Captain Pappas as investigating officer was based upon the ground first asserted by defense counsel on 9 January 1978. At trial on 23 June the Government failed to present evidence regarding the appointment of Captain Pappas or her subsequent disqualification. It further failed to explain the delay at HQ USAFE/JA between 13 March and 3 April 1978 while the report of investigation was reviewed. Since the Government had knowledge of Captain Pappas' apparent disqualification prior to her appointment, and since defense counsel challenged said officer at the earliest possible opportunity, this court finds that the delay in processing these charges which resulted from the disqualification of Captain Pappas constituted a further violation of the policies set out in AFM 111–1, paras 1–3a and 1–3a(1). The total delay attributable to the Government in processing charges against the accused is from mid-October 1977 until 13 April 1978 when a new investigating officer was appointed. Under no circumstances could the delay in preferring the charges of 6 January be attributable to the accused; nor could the Government's knowing appointment of a disqualified investigating officer be attributable to the accused.

In *United States v. Russo,* 1 M.J. 134 (C.M.A.1975), the United States Court of Military Appeals set aside findings of guilty and the sentence due to an Army recruiter's failure to follow applicable regulations. The Court's opinion was based upon the principle "that a Government agency must abide by its own rules and regulations where the underlying purpose of such regulations is the protection of personal liberties or interests." The *Russo* decision is not cited for the proposition that dismissal of charges is the only appropriate remedy when the Government fails to follow a regulation. As Trial Counsel set out in his brief, the Army Court of Military Review in *United States v. Perl,* 2 M.J. 1269 (A.C.M.R. 1976), held that "if the regulation is adopted for the benefit of the particular government agency in transacting its business and is not designed to confer important rights upon individuals, a person cannot complain of deviations from the regulation except upon a showing of substantial prejudice." (Citing *American Farm Lines v. Black Ball Freight Service,* 397 U.S. 532, 90 S.Ct. 1288, 25 L.Ed.2d 547; and *National Labor Relations Board v. Monsanto Chemical Company,* 205 F.2d 763 (8th Cir. 1953).

Since this court found that the Government violated the provisions of para 1–3, AFM 111–1, and since there was no showing that the accused suffered substantial prejudice therefrom, the only issue requir-

**518**

ing resolution is whether the underlying purpose of AFM 111–1, para 1–3, is the protection of personal liberties or interests.

The introductory paragraph of Air Force Manual 111–1 states:

> This manual has been prepared to assist judge advocate officers and other Air Force personnel in the administration of military justice. It contains Department of the Air Force implementation of the Manual for Courts-Martial, 1969 (revised Edition) . . .

AFM 111–1, para 1–3a(1), cites UCMJ, Articles 10, 33, 98; MCM, 1969 (Rev), (rev), paras 22, 25, 68i, 177 and 125e as Code and Manual provisions implemented thereby. Of these provisions, paragraph 25, MCM supra, is particularly relevant in determining the underlying purpose of the paragraph 1–3. It provides in pertinent part:

> 25. WHEN PREFERRED. When any person subject to the code is placed in arrest or confinement prior to trial, immediate steps shall be taken to inform him of the specific wrong of which he is accused (32f(1)) and to try him or to dismiss the charges and release him (Art. 10). Any person subject to the code who is responsible for unnecessary delay in the disposition of any case of a person accused of an offense under the code shall be punished as a court-martial may direct (Art. 98). When it is intended to prefer charges, they should be preferred without unnecessary delay. An accumulation or saving up of charges through improper motives is prohibited; but when a good reason exists—as when a person is permitted to continue a course of conduct so that a ringleader or other conspirators may also be discovered or when a suspected counterfeiter goes uncharged until his guilty knowledge becomes apparent—a reasonable delay is permissible if the person concerned is not in arrest or confinement.

Clearly these provisions require timely disposition of all cases. It is significant that Article 98, UCMJ, cited above, creates a criminal sanction for any person subject to the code who is responsible for unnecessary delay in disposing of a case. While it may be questionable whether Article 98 applies

to pre-preferral delays, resolution of that issue is not essential in evaluating the issue being considered. It is clear beyond cavil that AFM 111–1, para 1–3, either restates and implements paragraph 25 of the Manual or announces an Air Force policy entirely consistent with the President's Executive Order. To assert, as does the Government, that provisions of law which require immediate action when a person's liberty is restrained, proscribe criminal sanctions for unnecessarily delaying a case, require timely preferral of charges in all cases, and allow for reasonable delay in processing complicated cases are intended only to benefit the Government agency in transacting its business, states a position of questionable validity. This is especially true in view of the Secretary's language in the first sentence of AFM 111–1, para 1–3a:

> Consistent with justice and fairness to the *parties* concerned, expeditious processing of courts-martial is required by law and Air Force policy. : . . (Emphasis added).

After considering the purpose of AFM 111–1 and the nature of the Code and Manual provisions implemented in para 1–3 thereof, this court finds that the underlying purpose of such manual provisions is the protection of personal liberties or interests. Accordingly, the accused "had standing" to attack the Government's failure to comply with these cited manual provisions. Under the rationale of *U. S. v. Russo,* supra and *U. S. v. Perl,* supra, dismissal of all charges and specifications was an appropriate remedy, notwithstanding the accused's failure to show substantial prejudice.

Although this court dismissed all charges and specifications against the accused on 23 June, dismissal was not the only remedy considered from the outset of the proceeding. As an alternative, in the event of a conviction, this court considered using a jury instruction explaining that excessive Government delay in preferring or processing the charges would be a matter the jury should consider in arriving at an appropriate sentence. Such practice has been used by this court in previous cases. Although an instruction might otherwise have been an appropriate remedy, it was deemed that

judicial management policies and procedures existing within this command, USAFE, militated against its use. To clarify the perceived problem, this court takes judicial notice of the pertinent provisions of USAFE Supplement 1 to AFM 111–1, para 3–1(e) (Added), which has been in effect since 6 March 1974. The relevant portions of this supplement state:

Charges should not be preferred formally more than five days before the trial date set for a special court-martial, unless the accused's DOS, DEROS, or pretrial restraint require the earlier preferral of charges . . .

This court also takes judicial notice of a 17 March 1978 letter from the Staff Judge Advocate, Hq USAFE, to all USAFE Staff Judge Advocates, Subject: Court-Martial Processing Times. Pertinent provisions of para 2.a thereof are set out below:

a. Prior to preferring charges and appointing the Article 32 investigating officer, be sure that everything is in readiness for the Article 32 to commence. Valuable processing time was lost in several general courts-martial last year because following preferral and appointment of the Article 32 investigating officer, the staff judge advocate suddenly discovered that key witnesses were on leave or were otherwise unavailable to testify. . . .

The remainder of the lengthy Staff Judge Advocate's letter laudably expressed a keen appreciation for the importance of expeditious processing of cases after preferral of charges. It also set out time saving examples and recommended procedures for improving processing efficiency. However, the apparent intent of the quoted provision was to require base staff judge advocates to delay preferral of charges in potential general courts-martial until all key Government witnesses would be available to appear at an Article 32 hearing. In this court's opinion, the comments of the Staff Judge Advocate regarding cases warranting investigation under Article 32, UCMJ, and the quoted provision of USAFE Supplement 1 to AFM 111–1 constitute expressions of a command policy which are in direct contravention of the provisions of paragraph 25 of the Manual for Courts-Martial and Air Force Manual 111–1, para 1–3.

In the instant case, there was no direct evidence tending to establish that the Government's lengthy and unexplained delay from mid-October 1977 until 6 January 1978 was occasioned by adherence to the aforementioned policy. However, the chronology of events presented at trial, Appellate Exhibit IV, describes activities clearly consistent with the suggestions disseminated by the 17 March 1978 letter. Although this court was aware of the contents of this letter at the time of trial, the letter was not offered or specifically considered by the court during the 23 June proceeding. It is incorporated by reference in this opinion only as a recent affirmation of a long standing Headquarters United States Air Forces in Europe policy regarding delayed preferral of charges in potential general courts-martial. Since this court has perceived the existence of such a policy for over eighteen months and since this court has concluded such policy to be contrary to the law, consideration and evaluation of the policy, as it may relate to the facts of this case, is determined to be appropriate, if not mandatory, in rendering this opinion. It is not the court's position that dismissal of charges is required each time the Government fails to comply with the provisions of AFM 111–1, para 1–3, herein considered. Unexplained delays of short duration, those measured in days rather than months, may not require such a severe remedy. However, where the Government's delay in preferring charges is lengthy, unexplained and apparently consistent with command policy, dismissal of all charges and specifications, in this court's opinion, is the only appropriate remedy.

Having reconsidered its ruling of 23 June 1978 and having determined that such ruling was not contrary to the law, this court directs that all Charges and Specifications be: Dismissed.