James F. COURTNEY, Fireman Apprentice, U. S. Navy, Petitioner,

v.

J. H. D. WILLIAMS, Captain, U. S. Navy, Head, Military Personnel Department, Naval District Washington, Colonel Dizialo, U. S. Marine Corps, Commanding Officer, Correctional Facility, Marine Corps Base, Quantico, Virginia, and William T. Vest, Lieutenant Commander, Judge Advocate General Corps, U. S. Navy, Military Judge, Naval District Washington, Respondents.

Miscellaneous Docket No. 75–64.

U. S. Court of Military Appeals.

Jan. 23, 1976.

2. Article 57(a) and (b), UCMJ, 10 U.S.C. §§ 857(a) and (b).

268

Lieutenant Commander Carl H. Horst, JAGC, USN, argued the cause for Petitioner. With him on the brief was Lieutenant Michael E. Blount, JAGC, USN.

Lieutenant Commander Harvey E. Little, JAGC, USN, argued the cause for Respondents.

Colonel Alton H. Harvey, Major Richard J. Goddard, and Captain Ralph E. Sharpe, of the Defense Appellate Division, U. S. Army Legal Services Agency, filed a brief amicus curiae in support of the Petitioner.

Colonel Jerry E. Conner and Major John A. Cutts, III, Appellate Defense Counsel, U. S. Air Force, filed a brief amicus curiae.

Lieutenant Patricia L. Shebest, USCGR, of the Appellate Defense Division of the Coast Guard, filed a brief amicus curiae on behalf of Petitioner.

Lieutenant Colonel Donald W. Hansen and Captain Dana C. McCue, Appellate Government Counsel, U. S. Army, filed a brief amicus curiae on behalf of the Department of the Army.

Colonel Julius C. Ullerich, Jr., Appellate Government Counsel, U. S. Air Force, filed a brief amicus curiae.

Lieutenant G. Alex Weller, USCGR, Appellate Government Counsel, U. S. Coast Guard, filed a brief amicus curiae on behalf of the Government.

## OPINION OF THE COURT

FLETCHER, Chief Judge:

█ Petitioner appears before us in a petition for extraordinary relief [1] challenging the legality of his pretrial confinement.[2]

---

1. 28 U.S.C. § 1651(a).

2. There can no longer be any doubt that we have the authority to exercise extraordinary writ power in areas such as this. *Noyd v.*

*Bond,* 395 U.S. 683, 695 n. 7, 89 S.Ct. 1876, 23 L.Ed.2d 631 (1969); *United States v. Snyder,* 18 U.S.C.M.A. 480, 40 C.M.R. 192 (1969); *United States v. Bevilacqua,* 18 U.S.C.M.A. 10, 39 C.M.R. 10 (1968); *Levy v. Resor,* 17 U.S.C.M.A.

He asks that we order his immediate release from confinement and the dismissal of all charges against him. He also alleges that the trial judge's refusal to grant him a hearing to determine the legality of his pretrial confinement constituted a denial of due process of law under the Fifth Amendment to our Constitution. Because of the recurring problem that is presented by the petition, we issued a show cause order to the respondents and invited the appellate divisions of all of the services not directly involved in the case to file pleadings as *amicus curiae*. We wish to express our gratitude to all who appeared as *amicus*. After all pleadings were filed, we heard oral argument on the issues presented.

On October 7, 1975, the petitioner was placed in pretrial confinement for committing an alleged assault the day before and an assault charge was preferred. At the time, petitioner was awaiting trial for two specifications of unauthorized absence [3] which had been referred to a special court-martial on September 25, 1975. The convening authority of the special court-martial ordered the petitioner into confinement after being advised of the assault incident by a subordinate. Petitioner was not afforded an opportunity to respond to the convening authority concerning the confinement decision. Thereafter, petitioner requested that an Article 39(a) [4] session be held to inquire into the legality of his pre-

trial confinement. The trial judge of the special court-martial to which the AWOL charges had been referred called an Article 39(a) session but, after considering argument by the respective parties, ruled that he did not have jurisdiction to proceed. His ground for the ruling was that the charge for which the petitioner had been confined had not been referred to trial.

A specification alleging the assault of October 7 and a specification alleging a conspiracy to commit the same assault were referred to a special court-martial on October 29. A few days later the convening authority determined that there was no "objective basis" for keeping petitioner confined more than 30 days.[5] Petitioner was released from confinement on November 6, 1975.

In *Gerstein v. Pugh,* 420 U.S. 103, 111, 95 S.Ct. 854, 861, 43 L.Ed.2d 54 (1975), the Supreme Court of the United States was faced with two issues:

> [W]hether a person arrested and held for trial on an information is entitled to a judicial determination of probable cause for detention, and if so, whether the adversary hearing ordered by the District Court and approved by the Court of Appeals is required by the Constitution.

The first issue was answered affirmatively.

> [A] policeman's on-the-scene assessment of probable cause provides legal justification for arresting a person suspected of crime, and for a brief period of detention

135, 37 C.M.R. 399 (1967); *Gale v. United States,* 17 U.S.C.M.A. 40, 37 C.M.R. 304 (1967); *United States v. Frischholz,* 16 U.S.C.M.A. 150, 36 C.M.R. 306 (1966). In *Gale* we said:

> We conclude, therefore, that, in an appropriate case, this Court clearly possesses the power to grant relief to an accused prior to the completion of court-martial proceedings against him. To hold otherwise would mean that, in every instance and despite the appearance of prejudicial and oppressive measures, he would have to pursue the lengthy trial of appellate review—perhaps even serving a long term of confinement—before securing ultimate relief. We cannot believe Congress, in revolutionizing military justice and creating for the first time in the armed services a supreme civilian court in the image of the normal Federal judicial system, intended it not to exercise power to grant relief on an extraordinary basis, when the circumstances so require.

*Id.* 17 U.S.C.M.A. at 43, 37 C.M.R. at 307. We may resort to extraordinary writs where such will be in aid of our jurisdiction over cases properly before us or which may come here eventually, *United States v. Snyder, supra,* for Article 67, Uniform Code of Military Justice, 10 U.S.C. § 867, does not describe the full panoply of our powers. *United States v. Bevilacqua, supra.*

3. Article 86, UCMJ, 10 U.S.C. § 886.

4. Article 39(a), UCMJ, 10 U.S.C. § 839(a).

5. The reason for this determination was the fact that the victim of the alleged assault whose personal safety may have been endangered by petitioner's release had departed the area. Fear for the safety of this person was one of the primary reasons leading to petitioner's initial confinement.

to take the administrative steps incident to arrest. Once the suspect is in custody, however, the reasons that justify dispensing with the magistrate's neutral judgment evaporate. There no longer is any danger that the suspect will escape or commit further crimes while the police submit their evidence to a magistrate. And, while the State's reasons for taking summary action subside, the suspect's need for a neutral determination of probable cause increases significantly. The consequences of prolonged detention may be more serious than the interference occasioned by arrest. Pretrial confinement may imperil the suspect's job, interrupt his source of income, and impair his family relationships. See R. Goldfarb, Ransom 32–91 (1965); L. Katz, Justice is the Crime 51–62 (1972). Even pretrial release may be accompanied by burdensome conditions that effect a significant restraint on liberty. See, e. g., 18 USC §§ 3146(a)(2), (5). When the stakes are this high, the detached judgment of a neutral magistrate is essential if the Fourth Amendment is to furnish meaningful protection from unfounded interference with liberty.

*Gerstein v. Pugh, supra* at 113, 95 S.Ct. at 863.

The Code provides no procedure for reviewing the probable cause determination that is made by the person ordering arrest or confinement.[6] While it provides that probable cause is needed to order arrest or confinement[7] and while it enumerates those persons authorized to arrest or confine,[8] it does not go that next step that is mandated by the Constitution. Although the confinement officer must report confinement to the confinee's commanding officer within 24 hours after confinement,[9] the Code does not require the commanding officer to take further action. And, the general court-martial convening authority

need only review the confinement every 30 days.[10]

■ The Supreme Court has held:

The military courts, like the state courts, have the same responsibilities as do the federal courts to protect a person from a violation of his constitutional rights.

*Burns v. Wilson,* 346 U.S. 137, 142, 73 S.Ct. 1045, 1048, 97 L.Ed. 1508 (1953). And we have stated:

The protections of the Bill of Rights, except those which are expressly or by necessary implication inapplicable, are available to members of our armed forces. *Burns v. Wilson,* 346 U.S. 137, 73 S.Ct. 1045, 97 L.Ed. 1508 (1953); *Shapiro v. United States,* 69 F.Supp. 205, 107 Ct.Cl. 650 (1947); *United States v. Hiatt,* 141 F.2d 664 (CA 3rd Cir.) (1944).

*United States v. Jacoby,* 11 U.S.C.M.A. 428, 430–31, 29 C.M.R. 244, 246–47 (1960). Even though the Bill of Rights applies to persons in the military, "the rights of men in the armed forces must perforce be conditioned to meet certain overriding demands of discipline and duty." *Burns v. Wilson, supra* 346 U.S. at 140, 73 S.Ct. at 1048. However, the burden of showing that military conditions require a different rule than that prevailing in the civilian community is upon the party arguing for a different rule. *Kauffman v. Secretary of the Air Force,* 135 U.S.App.D.C. 1, 415 F.2d 991 (1969).

■ We believe that those procedures required by the Fourth Amendment in the civilian community must also be required in the military community. We discern no considerations of military necessity that would require a different rule. Moreover, respondents conceded during oral argument *Gerstein's* applicability to the military.

The *Gerstein* decision requires only that a neutral and detached magistrate determine

6. See Articles 7–13, UCMJ, 10 U.S.C. §§ 807–13.

7. Article 9(d), UCMJ, 10 U.S.C. § 809(d).

8. Article 9(b) and (c), UCMJ, 10 U.S.C. §§ 809(b) and (c).

9. Article 11(b), UCMJ, 10 U.S.C. § 811(b).

10. DOD Dir. 1325.4, para. III A. 2. b.

whether probable cause exists to detain a person. Basically, a determination that probable cause exists only confirms that a person could be detained, not that he should be detained. Assuming that he could be detained, the bail procedures in the civilian community would then be applicable.

In the military, however, bail does not exist.[11] After the conclusion is reached that one could be detained because of the existence of probable cause, then the next question—whether he should be detained—is all important.[12] A determination to detain has far reaching consequences, both to the individual and to the potential fairness of the military justice system.

■ A fundamental component of due process is the presumption of innocence accorded the criminal defendant. *In re Winship,* 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970).

> Pretrial release has long been recognized as a vital concomitant of that presumption. If a person may arbitrarily be confined before his trial, then in truth punishment precedes conviction and the presumption of innocence avails defendant little.

*DeChamplain v. Lovelace,* 510 F.2d 419, 424 (8th Cir. 1975), *judgment vacated as moot,* 421 U.S. 996, 95 S.Ct. 2392, 44 L.Ed.2d 664 (1975). See also *Stack v. Boyle,* 342 U.S. 1, 72 S.Ct. 1, 96 L.Ed. 3 (1951).

The " 'traditional right to freedom before conviction permits the unhampered preparation of a defense.' " *DeChamplain v. Lovelace, supra at 424,* citing *Stack v. Boyle, supra.* In addition to the psychologi-cal and physical deprivations brought about by incarceration and the hardships caused to members of an incarcerated person's family, studies have indicated that the conviction rate for jailed defendants materially exceeds that of bailed defendants and a bailed defendant is far more likely to receive probation than his jailed counterpart since the former has been able to demonstrate his reliability under supervision. *See* ABA Standards Relating to the Administration of Criminal Justice, Compilation, p. 216 (1974).

We believe, then, that a neutral and detached magistrate must decide more than the probable cause question. A magistrate must decide if a person could be detained and if he should be detained.[13] The consequences of detention are too important to require less.[14]

■ We have been informed by counsel for respondents that the petitioner has been tried, found guilty, and sentenced. In view of this event, the petitioner has received, albeit untimely, that relief that he seeks—a hearing before a neutral and detached body on the probable cause issue (and the ultimate issue). Moreover, since he has been released from pretrial confinement, we are unable to grant him further relief.

The petition for extraordinary relief is denied.

FERGUSON, Senior Judge (concurring):

I concur with the excellent opinion of the Chief Judge, but I would add that the military judge is empowered under the existing

---

11. Bail Reform Act of 1966, 18 U.S.C. § 3152(2); *Levy v. Resor, supra.*

12. The question whether the military person should be detained is resolved on the basis of need to detain in order to insure presence at trial. Article 13, UCMJ, 10 U.S.C. § 813; *United States v. Bayhand,* 6 U.S.C.M.A. 762, 21 C.M.R. 84 (1956).

13. The United States Court of Appeals for the Eighth Circuit has already reached the same conclusion. *DeChamplain v. Lovelace,* 510 F.2d 419 (8th Cir. 1975), *judgment vacated as moot,* 421 U.S. 996, 95 S.Ct. 2392, 44 L.Ed.2d 664 (1975). We decline to speculate as to the reasons why the judgment was vacated as moot. In any event, it is the principles enunciated therein that we find compelling. We note, additionally, that the Uniform Code of Military Justice contemplates and provides that a hearing may be held prior to the time charges are preferred. Article 32(c), Uniform Code of Military Justice, 10 U.S.C. § 832(c).

14. The Army has already instituted a military magistrates program which takes a commendable step in this direction. See the proposed change to Chapter 16, AR 27–10.

Uniform Code of Military Justice [1] to hold the hearing which is the subject of the principal opinion.[2] The legislative history of the Code amendments of 1968 [3] convinces me that it was the intent of the Congress, in changing the title of the "law officer" of the 1950 Code to "military judge" and in effecting the significant substantive changes in the Code regarding the powers and the responsibilities of the military judge, that the holders of that office have all the prestige and authority of other federal trial judges wherever practicable.[4] In fact, then-Brigadier General Kenneth J. Hodson,[5] in speaking on behalf of the Department of Defense in support of such statutory modifications, suggested that the amendment would " 'assimilate the status of the law officer, wherever possible, to that of a civilian judge of the Federal system.' " [6] The Code restriction on the military judge to holding Article 39(a) sessions only *after* referral of the charges of concern to a court to which he is detailed as judge is immaterial, for it simply is akin to the authority of a federal judge to act on preliminary matters, as same relates to the trial of criminal charges, only after the grand jury returns a true bill of indictment; no claim is made, however, that the federal judge has no power to affect the pretrial confinement of a prisoner *before* a true bill is returned. As an excellent treatment of the inherent powers of a military judge *qua* judge, I commend the reading of Stevenson, *The Inherent Authority of the Military Judge,* 17 AFL Rev. 1 (1975).

COOK, Judge (concurring in the result):

In my dissents in *Porter v. Richardson,* 50 C.M.R. 910 (1975), and *Phillippy v. Mc-*

*Lucas,* 50 C.M.R. 915 (1975), I explained my reasons for adhering to a long line of cases in this Court which held that an accused " 'who, prior to trial, believes his confinement is improper for any reason must pursue the remedy provided by Article 138.' *Tuttle v. Commanding Officer,* 21 U.S.C. M.A. 229, 230, 45 C.M.R. 3, 4 (1972)." As to the impact of *Gerstein v. Pugh,* 420 U.S. 103, 95 S.Ct. 854, 43 L.Ed.2d 54 (1975), upon the military practice in regard to confinement and the authority of a military judge, under existing law, to order an accused's release from pretrial confinement, my views are contrary to those of the majority. I stated my reasons at length in *Porter* and *Phillippy* and, therefore, think it sufficient here to set out only a few excerpts from my *Porter* opinion:

In *Gerstein,* the Supreme Court expressly held that an adversary hearing [to determine probable cause to confine before trial] was not required. It observed that "traditionally . . . [the matter was considered] in a nonadversary proceeding on hearsay and written testimony" and confrontation, cross-examination, and counsel were not constitutionally required. 420 U.S. at 120 [, 95 S.Ct. 854].

. . .

. . .

What jurisdiction . . . does a court-martial or a military judge have to change or eliminate the restraint imposed by proper authority upon an accused charged with a violation of the Uniform Code?

1. 10 U.S.C. §§ 801–940.

2. While the military judge is, I believe, so empowered, he certainly is not the *only* figure who could have such authority.

3. Act of October 24, 1968 (Military Justice Act of 1968), P.L. 90–632, 82 Stat. 1335.

4. S.Rep.No.1601, 90th Cong., 2d Sess., 3 United States Code Congressional and Administrative News, pp. 4501–04 (1968); 114 Cong.Rec. 29397–99, 30564–5 (1968).

5. Then-Brigadier General Kenneth J. Hodson was at that time Assistant Judge Advocate General of the Army for Military Justice. Subsequently, Major General Hodson became The Judge Advocate General of the Army.

6. *Joint Hearings on S 745 et al Before the Subcomm on Constitutional Rights of the Senate Comm on the Judiciary and a Special Subcomm of the Senate Comm on Armed Services,* 89th Cong.2d Sess., pt. 1, at 18 (1966).

Commenting on proposals to reform the courts-martial system beyond the changes effected by the Military Justice Act of 1968, one of the leading commentators on the military system, Professor Robinson O. Everett, has suggested that Congress might "enact enabling legislation" to authorize "use of military magistrates in any decision to release an accused from pretrial confinement."[2]

[2] Everett, *Military Justice in the Wake of Parker v. Levy,* 67 Military L.Rev. 1, 15, 16 (1975).

In our 1972 Annual Report to Congress, we described "[r]esponsibility for pretrial confinement" as a "command function."[3]

[3] Annual Report of the US Court of Military Appeals and the Judge Advocates General of the Armed Forces and the General Counsel of the Department of Transportation, 1972, at 6.

Both statements merely summarize the principle that, currently, whether or not an accused should be in confinement or under other restraint before trial is not a matter within the jurisdiction of a court-martial.

.    .    .    .    .

Federal civilian law grants a defendant the right to appeal a magistrate's decision to retain him in pretrial confinement to the "court having original jurisdiction over the offense." 18 U.S.C. § 3147. Military law also grants the right to review the decision to impose pretrial restraint, but not by a court-martial. In fact, the Manual for Courts-Martial prohibits a court-martial from interceding in the matter except to preserve the accused's right to be present at all sessions of the court. Thus, as provided by paragraphs 21*c* and 22 of the Manual, a court-martial has no control over the nature of arrest or other status of restraint of a prisoner except as regards his custody in its presence, and the proper authority to release an accused from confinement in a military confinement facility is the commanding officer to whose command that facility is subject. In cases decided after the Military Justice Act of 1968, the Court left no doubt that the act's redesignation of the law officer as military judge and the enlargement of his powers did not affect existing law as to release of an accused from pretrial confinement.

.    .    .    .    .

Whether an accused should or should not be in pretrial confinement is wholly unrelated to the question of his guilt and punishment. As the Supreme Court recently reaffirmed, illegal pretrial detention cannot affect a conviction. *Gerstein v. Pugh, supra* at 119 [, 95 S.Ct. 854]. Consequently, the propriety of pretrial confinement is an altogether different question from the conditions of confinement and the consequences of those conditions. The latter may improperly affect the accused's capability to prepare for trial, the admissibility of evidence obtained from him while in confinement, or otherwise amount to a denial of due process. [Citations omitted.] These issues are appropriate for presentation to a trial court; but the question of whether an accused should be released from confinement is not.

As I perceive no merit in the petition for extraordinary relief, I agree with the majority that it must be denied.