**UNITED STATES, Petitioner,**

v.

**Jean VAN SLATE Captain Judge Advocate General's Corps U.S. Navy Military Judge, and Richard L. Ashe 250 29 3798 Lance Corporal U.S. Marine Corps, Respondents.**

**Miscellaneous Docket No. 82–12.**

U. S. Navy-Marine Corps Court of Military Review.

Decided 9 Oct. 1982.

Opinion Published 21 Oct. 1982.

LCDR David S. Durbin, JAGC, USNR, Counsel for Respondent Military Judge.

MAJ Joseph M. Poirier, USMC, Counsel for Respondent Ashe.

LCDR W.A. Dorsey, JAGC, USNR, Counsel for Petitioner.

CEDARBURG, Chief Judge:

The Court has restyled the Petition as above to include the accused in the special court-martial convened by the Commanding Officer, Marine Barracks, Naval Weapons Station, Charleston, South Carolina as real party in interest. The Respondent Military Judge's motion for postponement of hearing and time to file pleadings was considered from the bench and denied. Hearing was held on 9 October 1982. Decision was rendered from the bench to be followed by a written opinion.

The Court has considered oral argument of counsel at the 9 October hearing, as well as the Petition and Amended Petition for Extraordinary Relief in the Nature of a Writ of Mandamus, the responses on behalf of each Respondent and the transcript of special court-martial proceedings on 4, 5 and 6 October 1982 relating to the motion for appropriate relief requesting that (1) Lance Corporal Ashe's pretrial confinement after 23 September 1982 be declared illegal and day-for-day credit directed, and (2) that Lance Corporal Ashe be ordered out of pretrial confinement.

Judge Van Slate deferred ruling on the issue of credit for confinement, but directed Lance Corporal Ashe's release from pretrial confinement on 4 October 1982. After being requested to reconsider his ruling by the convening authority, the military judge adhered to his prior ruling and ordered that Lance Corporal Ashe be released prior to 1500, 6 October. He thereafter stayed the release time till 1900, 6 October to permit this Court to consider a Motion to Stay the execution of his order pending submission of a Petition for Extraordinary Relief in the Nature of A Writ of Mandamus. This Court on 6 October ordered a stay of execution of the release order. I dissented from the order. The Respondent Military Judge petitioned the United States Court of Military Appeals to dissolve our Stay Order. The Court of Military Appeals on 7 October ordered the Stay Order dissolved immediately without prejudice of the right of the Government to petition for extraordinary relief, in which event, it was to be considered by this Court in light of their decisions in *Dettinger v. United States,* 7 M.J. 216 (C.M.A.1979), and *United States v. Redding,* 11 M.J. 100 (C.M.A.1981).

The Petitioner sought relief as follows:

A. THE PETITIONER SEEKS, ON THE GROUNDS THAT THE RESPONDENT ABUSED HIS DISCRETION IN RULING AGAINST THE CLEAR WEIGHT OF THE EVIDENCE, AN ORDER REQUIRING THE CONTINUED PRETRIAL CONFINEMENT OF THE ACCUSED.

B. IN THE ALTERNATIVE, THE PETITIONER SEEKS, ON THE GROUNDS THAT THE RESPONDENT ABUSED HIS DISCRETION IN REFUSING TO RECONSIDER HIS RULING AND ALLOW THE GOVERNMENT TO PRESENT THE EVIDENCE REFERRED TO IN PARAGRAPH TWO OF APPELLATE EXHIBIT X, AN ORDER REQUIRING THE RESPONDENT TO RECONSIDER HIS RULING IN LIGHT OF THIS EVIDENCE.

C. IN EITHER EVENT, THE PETITIONER FURTHER SEEKS AN ORDER REQUIRING THE TRIAL OF THE ACCUSED TO PROCEED AS ORIGINALLY SCHEDULED.

■ At oral argument, counsel for Petitioner asserted that the primary basis for his contention that Judge Van Slate had abused his discretion, justifying extraordinary relief, was the trial judge's *de novo* consideration of whether Lance Corporal Ashe should be released, rather than simply reviewing the "legality" of the determination of the military magistrate to continue confinement which had been ordered by the Detachment Commanding Officer. We reject this reading of the case law which would so narrowly circumscribe the authority of the military judge to determine legality of confinement. We conclude that the clear concern of the U.S. Court of Military Appeals in cases dealing with the legality of an accused's pretrial confinement was to provide a remedy, *i.e.* release from confinement, where the operative facts at any given time would not support a deprivation of the pretrial liberty of an accused. The military judge was the logically chosen arbiter of that issue. *See United States v. Heard,* 3 M.J. 14 (C.M.A.1977); *Courtney v. Williams,* 1 M.J. 267 (C.M.A.1976); *Phillippy v. McLucas,* 50 C.M.R. 915 (C.M.A.1975); *Porter v. Rochardson,* 50 C.M.R. 910 (C.M.A. 1975). This Court in *United States v. Lamb,* 6 M.J. 542, 544 (N.C.M.R.1978), gave specific recognition to the independent authority of the military judge to consider and order a release from pretrial confinement when warranted, without again referring the matter to a military magistrate. We confirm that position.

■ The military judge, after receiving evidence on the issue of whether Lance Corporal Ashe's pretrial confinement should be continued, ordered him released. The Petitioner contends that certain relevant evidence was improperly excluded by the military judge at the original Article 39(a), UCMJ, 10 U.S.C. § 839(a), session which flawed his ruling. At worst, the military judge erred regarding the admissibility of

evidence in arriving at a ruling on an interlocutory motion for appropriate relief. The use of an extraordinary writ to review an interlocutory procedural order in a criminal case which does not have the effect of a dismissal has not been sanctioned by the Supreme Court. *Will v. United States,* 389 U.S. 90, 98, 88 S.Ct. 269, 275, 19 L.Ed.2d 305 (1967). This Court, likewise, cannot intrude in this area.

■ We have considered the Petition "in light of [the U.S. Court of Military Appeals] decisions in *Dettinger v. United States,* 7 M.J. 216 (C.M.A.1979) and *United States v. Redding,* 11 M.J. 100 (C.M.A.1981)." USCMA Order, Misc. Dkt. No. 83–1, 7 Oct 1982. The evidence before us clearly demonstrates that Judge Van Slate performed a discretionary act within the bounds of his legal authority. We have no authority, in the exercise of our extraordinary writ power, to substitute our discretion for that of the trial judge. *Dettinger v. United States,* supra at 224; *United States v. Redding,* supra at 109. Accordingly, the Petition for Extraordinary Relief in the Nature of a Writ of Mandamus is denied.

Judge GORMLEY concurs.

MAY, Judge (concurring/dissenting):

I concur in the result arrived at here, but only because the trial judge, in the interim period between the vacation of this Court's stay order of 6 October 1982 and the present extraordinary writ hearing, convened an Article 39(a) session and considered evidence of the accused's reputation for violence. The trial judge's subsequent decision, following consideration of this previously barred evidence to adhere to his previous release decision, was, in my view, not an abuse of discretion, and I accept that discretionary ruling.

___

1. The record of the initial Article 39(a) session conducted on 4 October 1982 reflects some confusion or misinterpretation on the part of trial counsel as to the trial judge's receptivity to reputation evidence. Clearly, the judge refused to consider evidence of specific prior assaults by the accused stating that such evidence was not relevant to the issue of continued pretrial confinement. On 5 October 1982,

## ABUSE OF DISCRETION AT 4 OCT 82 HEARING AND 5 OCT 82 RECONSIDERATION HEARING

I dissent most vigorously, however, from my brothers' view that the respondent trial judge did not abuse his discretion at the 4 October hearing and the 5 October reconsideration hearing, when he refused to receive evidence of the accused's reputation for violence and previous assaultive behavior.[1] The apparent basis of my brothers' view that this Court is powerless to intervene is our higher court's opinions in *Dettinger v. United States,* supra at 224, and *United States v. Redding,* supra at 109. I find no such limiting edict in those opinions. I certainly recognize the statutory authority of our higher court. My dissent here, however, rests upon the view that my brothers' *interpretation* of *Dettinger* and *Redding* flies in the face of judicial precedent, the concept and purpose of appellate review, and the specific and unique character of the military criminal justice system.

In *Dettinger,* the Court of Military Appeals overturned the decision of the Air Force Court of Military Review in *United States v. Dettinger,* 6 M.J. 505 (A.F.C.M.R. 1978). That decision had reversed the discretionary rulings of two Air Force trial judges, which had resulted in dismissal of charges based upon speedy trial motions. Our higher court, after upholding the power of Courts of Military Review extraordinary writ intervention, ruled that the Air Force appellate court had improperly attempted to "control the decision of the trial judge". The Court ruled that absent violation of statutory or decisional law or "any provision of the Air Force Manual" no grounds for extraordinary relief existed.

What remains unanswered, and significantly so, in my view, is what powers reside

___

in response to the convening authority's request for reconsideration, which specified that the judge had previously refused to consider both reputation and specific incident evidence, the judge refused to consider any additional evidence and adhered to his original release order. The Government then moved this Court for a stay order on 6 October 1982.

in the courts of review or the Court of Military Appeals when a trial judge does rule in violation of decisional or statutory law, but *within* an area recognized as reserved to the trial judge's discretion? The Court of Military Appeals cautions against the intervention of subjective judgments, *i.e.,* the mere subjective substitution of an alternative ruling for that made by the trial judge. *Dettinger, supra,* 7 M.J. at 224. Certainly, none can argue against shielding the trial judge from intervention based solely on individual differences of judicial opinion.

I do not agree, however, with my brothers that *Dettinger* foreclosed appellate intervention when a trial judge acts without objective legal support, but within his area of discretionary authority. In other words, I do not find in either *Dettinger* or *Redding* that admonition, so easily favored by my brothers, that as the appellate court over the Navy Department's court-martial system, this Court has no remedial power over a trial judge's objectively unreasonable rulings. On the contrary, *Dettinger* specifically recognizes the appellate authority of the courts of review over the trial courts of respective service departments. *Dettinger, supra,* 7 M.J. at 220. Nor did the Court define the limits of such appellate authority. *Id.*

Certainly I do not find the authority, contended for by my brothers, in *Will v. United States,*[2] *supra,* that bars military courts of review from objective review of discretionary acts and rulings of trial judges within the military court-martial system. I find instead that the highest court of the military justice system has recognized the undefined limits, but surely the existence of, the "inherent power" of this Court to hear petitions for extraordinary relief from trial court rulings. *Dettinger, supra,* 7 M.J. at 222.

If such inherent power to wield appellate review and supervisory authority is recognized, surely the existence and necessity for appellate control of objectively unreasonable determinations at the trial level rests upon persuasive federal decisional precedent. The federal courts have consistently recognized the power of federal appellate tribunals to intervene, of necessity, in trial court rulings. However characterized or distinguished, the principles are well established: When the trial judge's ruling rests upon the assessment of witness testimony; conflicting factual assertions; contradictory evidence; and/or the recognized superior vantage point, in such instances, of the trial judge's bench with the attendant visual, auditory, and on-the-scene assessment advantages, the appellate tribunal will not intervene or disturb the trial judge's ruling. *Roche v. Evaporated Milk Association,* 319 U.S. 21, 63 S.Ct. 938, 87 L.Ed. 1185 (1943); *Cole v. Fairview,* 226 F.2d 175 (9th Cir. 1955); *Stafford v. Russell,* 220 F.2d 853 (9th Cir.1955); *Jones v. Jones,* 217 F.2d 239 (7th Cir.1954).

That principle of restraint, however, has not, and could not, under a concept of a balanced, responsive, and consistent judicial system, bar the necessary and appropriate intervention of appellate courts when under the facts and circumstances, the trial judge, although acting within his area of judicial authority, renders *objectively unreasonable* decisions.

It would seem that such exceptional intervention powers would be an obvious expression of "inherent powers." It would also seem clearly accepted that the decisions of trial judges, when *objectively* unreasonable, arbitrary, or unsupported, could not be permitted to impact in an unrestrained manner on a structure as unique and sensitive as the military justice system. We, of course, must, of necessity, render our decisions in accord with the "law," but that does not mandate unreasonable restraint or inaction when controlled and necessary action under the law is warranted.

---

2. The Court of Military Appeals analysis of *Will* was extensive and reflected obvious concern by our highest Court that the concept of appellate intervention in regards to trial court decisions was correctly circumscribed. That the decision in *Will* was not conclusive was made evident by the Court of Military Appeals' references to law review and legal encyclopedia analysis and interpretation. *Dettinger, supra,* 7 M.J. at 222.

### Trial Judge's Discretion And The Military Justice System

In determining the intervention authority of courts of review into the area of trial judge's discretion, it is mandatory, in my opinion, that the unique nature and purpose of the military justice system be a major consideration.

It is an often easy, and a generally justified approach, to ascertain reference points within the federal civilian court structure or the American Bar Association standards, for application within our system of military criminal law and procedures. Such inquiry and comparison must, in my view, be approached with a considered and knowledgeable pace. It is not the primary focus and function of a civilian criminal justice system to maintain a just and responsive system of criminal law for the maintenance of effective and disciplined armed forces under constitutional command. That is the purpose and design, however, of the statutory structure of the Uniform Code of Military Justice and the related procedural and substantive law encompassed within the military justice system.

It is not enough, in my view, to simply ascertain a standard or desired social policy as that policy is appropriate for application within our civilian communities and then to subsequently transpose concepts appropriate to those civilian arenas to application within the structure of military criminal law. This, of course, does not mean that the constitutional concepts considered equally applicable to the men and women of our armed forces as to our civilian citizens are to be disregarded in some headlong flight toward a monolithic military justice system impervious to standards and policies as relevant and necessary to our military structures as to our nation's civilian communities.

But we cannot disregard the far more unique and decisive impact of individual decisions arrived at in military courts-martial when compared to that occasioned in civilian criminal tribunals. The military justice system functions and impacts directly on the immediate operating and living environments of military units and organizations which are not capable of the social and professional segmentation available in a civilian work or industrial environment. The decision by a civilian criminal court judge generally impacts within a limited area, circumscribed by the accused and in many instances the alleged victims, sometimes with associated geographical relationships and close proximity of living conditions. Often, however, the size and dispersion of the civilian community permits the absorption and segregation of conflicting parties. The need, therefore, of explicit restraint such as pretrial confinement is less defensible. Actions and decisions of civilian criminal trial judges in regards to suppression motions and other forms of appropriate relief or dismissal actions can often be pronounced with limited immediate impact on a given community or the continued social and professional functions of the residents of that community.

Such insulation, however, is not available within a military unit or organization. The effect and impact of criminal offenses can quickly pervade and sap the morale of any unit because of the necessary intermixture of professional mission and duties with the equally necessary social and interpersonal relationships which are part and parcel with military life and tradition. A military unit cannot simply and painlessly absorb, for example, a suspected assault offender previously placed in pretrial confinement, if a good-faith belief that the potential for further assaults upon his victims is likely. Arrangements for the safety and order of a military unit must be a paramount concern of the military commander and must, in my opinion, be at least recognized as a significant consideration when assessing the decisions and actions of military trial judges.

Certainly, I do not advocate that the military trial judiciary be placed into a review or appeals structure that would remove any claim to the existence of an independent and authoritative trial judiciary. We well know that the demands upon our military trial judiciary rival, in both caseload and complexity, the burdens of civilian criminal

judges. However, appellate review by either the courts of review or the Court of Military Appeals cannot transpose those concepts and standards of civilian federal practice without continued recognition that the military units and structures over which our military justice is established, are volatile and sensitive structures upon which the decisions of military courts impact with often dramatic and sometimes devastating impact.

Recognition, therefore, of the specific uniqueness, nature, and purpose of both the military justice system and the military organizational environment is, in my opinion, a necessary and mandatory consideration when the authority of military appellate courts over the decisions rendered at the trial level is measured. *See Courtney v. Williams,* 1 M.J. 267 (C.M.A.1976).

Certainly our federal decisional law, state appellate decisions, and legal writings support the obvious—that in a government of laws, men cannot be permitted to decide what "the law" is, in an *unreasonable* manner. *Langnes v. Green,* 282 U.S. 531, 51 S.Ct. 243, 75 L.Ed. 520 (1930) (Supreme Court reversed district court judge's *discretionary* issuance of a restraining order, barring one of parties in case from action in state court. Discretion "means a sound discretion, that is to say, a discretion exercised not arbitrarily or willfully, but with regard to what is right and equitable under the circumstances and the law, and directed by the reason and conscience of the judge to a just result." at 541, 51 S.Ct. at 247); *Hudson v. Parker,* 156 U.S. 277, 15 S.Ct. 450, 39 L.Ed. 424 (1895) (trial judge declined to apply evidence, in a *discretionary* ruling, to existing law in bail issue. Order issued to trial court compelling him to consider evidence.); *United States v. Glenn,* 473 F.2d 191 (D.C.Cir.1972) (Trial judge, utilizing his *discretionary* power, barred as inadmissible hearsay, statements made by deceased murder victim, identifying her assailant shortly after being fatally attacked. The District of Columbia Circuit Court reversed trial judge's ruling, citing hearsay exceptions of excited utterance and dying declaration as sufficiently established in record. Ordered

reinstatement of case); *Fitzpatrick v. St. Louis and San Francisco Railway,* 327 S.W.2d 801 (Mo.1959) (Trial judge, utilizing *discretionary* powers, denied mistrial motion in personal injury case. State Supreme Court reversed decision based on examination of record, ordered case reinstated.); *See* McKean, "Some Aspects of Judicial Discretion," 40 *Dickerson L.Rev.* 168 (1966); Rosenberg, "Judicial Discretion of the Trial Court, Viewed From Above," 22 *Syracuse L.Rev.* 635 (1971).

In this case the trial judge, relying upon the holding in *United States v. Heard, supra,* and the supposed authoritative pronouncements of the American Bar Association's Standards for Pretrial Release, ruled as irrelevant the trial counsel's offer of evidence of previous incidents of assault committed by the accused. This accused was charged, in part, with two specifications of assault, one of them clearly brutal and extended, and two specifications of communicating threats to each of the victims involved in the assaults. The Government contended, at trial, that it was concerned about the safety of the witnesses and desired to establish that the assaultive nature of the accused could be made evident by the existence of prior assaultive conduct. The trial judge's response was:

MJ: Well, frankly, in making a determination in the Court's mind, I look to those standards which are listed in the ABA listing of those considerations the Court should follow in making a determination as to whether an individual should remain in confinement or otherwise. These were specifically authorized in *Hurd,* [sic] and therefore, it is from the Court's point of view, I'm more concerned at looking at the overall pro and con marks than I would as to a specific incident at some future time—or some past incident. So, again, and I don't see how that, at this point, the Court would consider that relevant on the issue of whether I should order the release of Lance Corporal A____. So, if there

is nothing further, do you have any other matters you would like to present?

TC: The Government, then, has nothing further Your Honor.

The trial judge then ordered the release of the accused from pretrial confinement after issuing a "protective order" to the accused not to communicate with any of the witnesses in the case. The following day, 5 October 1982, the convening authority requested reconsideration of the trial judge's release order. In the written reconsideration request, the convening authority referred to desired evidentiary submissions regarding the accused's prior assaultive conduct and opinion and reputation evidence of the accused's propensity for violence. These evidentiary issues were further cited by the convening authority as relevant to the existence of threat to the unit. The convening authority contended in his written request that the military judge had erred as a matter of law. Article 62(b), Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 862(a). Trial counsel, at this 5 October session, said that the trial judge had abused his discretion as a matter of law. The trial judge's response, following further argument, was to deny the Government request for reconsideration. The judge cited paragraph 67f, *Manual for Courts-Martial, 1969 (Rev.)* (MCM), as the authority for barring the presentment of additional evidence because, in his view, the issue was not one of law. He then specifically denied the convening authority's request for reconsideration.

The convening authority, via the trial counsel, next requested a temporary stay of the judge's release order for a period of 24–48 hours to facilitate the transport of victim-witnesses to a geographical location outside the command, as a protective measure. That temporary stay was granted by the trial judge with the proceedings before this Court and the Court of Military Appeals following.

### Abuse of Discretion

The application of an objective abuse of discretion analysis is most emphatically *not* a simplistic substitution of viewpoints or the offering of an alternative disposition. It represents, instead, the exercise of judicial acumen within the carefully controlled and restrained arena of the appellate courts. It is not, as some would characterize it, a mere subjective expression of opinion or a harbinger of wholesale intervention into the trial judge's discretionary parameters.

It does, however, represent long-standing, clearly defensible, and necessary checks on trial court decisions which exceed the bounds of our legal structure supposedly founded upon the consistent principles of law rather than the arbitrary or improper exercise of subjective decision. *See Rex v. Wilkes,* 4 Burr. 2529, 2539 (Eng.1770) ("sound discretion guided by law"); "Appellate court should disturb trial court judgment only when the proceeding, taken as a whole, could be said to have resulted in a denial of substantial justice or involved a serious departure from established procedure." Standards Relating to Appellate Courts, Standard 3.11, American Bar Association.

In this case, I do not attempt to substitute my personal judgment as to what would have been an appropriate ruling on accused's motion for release from pretrial confinement. That ruling, on the available evidence, is susceptible to differing opinions as to the credibility of government versus defense witnesses, and the weight and/or sufficiency of the evidentiary submissions. I find no abuse of discretion, as my concurrence herein indicates, with the trial judge's ruling, on 8 October 1982, following consideration of evidence related to the accused's reputation for violence.

However, as to the judge's ruling barring the introduction of specific assaults evidence as being irrelevant to the issue of continued pretrial confinement in this case, I assert that no *objective analysis* can support any such discretionary excess. The Government had contended the accused was a potential danger to his unit. Rule 405(b) can be no clearer in its recognition that

where a relevant character trait is at issue, specific incidents of relevant conduct are admissible. Here the trial judge ruled that specific incidents of assaultive behavior were not relevant to the safety of the community and the concomitant continued confinement decision. *Contra Dettinger.* Further, the case cited by the judge in his denial of the Government's evidentiary offer supports the Government's linkage between concern for the safety of the community and the pretrial confinement decision. *United States v. Heard,* 3 M.J. 14, 20–21 (C.M.A.1977). In my view then, the judge's initial ruling was not the "*lawful* exercise" of discretionary power viewed as impervious to remedy in *Dettinger.* (Citing *Roche, supra.*) It represented, instead, a rejection of decisional law and of reason.

The judge's subsequent ruling, following the convening authority's request for reconsideration, was a further extension of the earlier abuse of discretion, in my view. The trial judge, apparently relied upon the wording in paragraph 67f, MCM, to the effect that when the convening authority requests reconsideration of a ruling on an interlocutory motion, the court will not "consider any evidence or information other than that which is already in the record". The trial judge then ruled that the Government was requesting to place before the court additional evidence, and that such "additional evidence" was inadmissible.

The record is clear, however, that both the written communication of the convening authority admitted into evidence as an appellate exhibit, and the argument of the trial counsel, stated that an *issue of law* was involved. The judge's earlier ruling had barred the evidence offered by the Government as to the accused's assaultive character and reputation. The judge's ruling barring as "irrelevant" such evidence was a *ruling of law.* The Government was entitled to request reconsideration of that earlier evidentiary ruling. The content of the judge's ruling was that this was not an issue of law, and he adhered to his earlier release order.

The issue thus presented for reconsideration was that the military judge had erred in law when he barred the evidence proffered the previous day by the Government. That denial of reconsideration, whether viewed as the barring of a convening authority's attempt to present evidence *previously offered* (not "additional evidence") for reconsideration, or the plain denial of a reconsideration request, was, in my view, an abuse of discretion which only underlined the objectively unreasonable nature of the trial judge's ruling the previous day.

Even if we interpret the ruling by the military judge in a light most favorable to him and thereby presume that the military judge did, in fact, concomitantly re-examine his prior ruling and deny the request for reconsideration, he had been presented at that point with a written contention and offer of testimonial evidence objectively relevant to the convening authority's expressed concern for the safety of his command and the threat to Government witnesses. He arbitrarily, in my considered opinion, denied the Government a reasonable opportunity to address a significant public policy and societal issue—whether one who has been charged with the commission of crimes of violence within his community should be permitted to return directly to that community without comprehensive evaluation in the face of Government contentions of expected further violence and unit disruption.

I share my brothers' view that significant restraint must always be exercised when responding to such requests for extraordinary relief by the Government. I dissent vigorously, however, from their view here that this Court is unable to intervene in the face of such discretionary excess.