ERDMANN, Judge
(dissenting in part and concurring in part):
I concur with the majority’s conclusion that the Court of Criminal Appeals erred in holding that “manifest necessity” justified the convening authority’s withdrawal of charges. I do not agree, however, with the majority’s conclusion that Article 44(c), Uniform Code of Military Justice (UCMJ), was constitutionally applied in this case and therefore respectfully dissent from that portion of the opinion.[1]
As recognized by the majority, this court has long held that the Bill of Rights applies to servicemembers except for those that are “expressly or by necessary implication inapplicable.” Courtney v. Williams, 1 M.J. 267, 270 (C.M.A.1976) (quoting United States v. Jacoby, 11 C.M.A. 428, 430-31, 29 C.M.R. 244, 246-47 (I960)); United States v. Marcum, 60 M.J. 198, 206 (C.A.A.F.2004). “Even though the Bill of Rights applies to persons in the military, ‘the rights of men in the armed forces must perforce be conditioned to meet certain overriding demands of discipline and duty.’” Courtney, 1 M.J. at 270 (quoting Burns v. Wilson, 346 U.S. 137, 140, 73 S.Ct. 1045, 97 L.Ed. 1508 (1953)). Therefore when this court applies Supreme Court constitutional precedent, it does so while “specifically addressing] contextual factors involving military life.” Marcum, 60 M.J. at 205. A statutory or regulatory provision in the civilian community that is held to offend the Constitution may nevertheless withstand a constitutional challenge in the military if there exists overriding demands of discipline and duty that are either expressly stated or necessarily implied. See Id. at 206; Courtney, 1 M.J. at 270.
“[T]he burden of showing that military conditions require a different rule than that prevailing in the civilian community is upon the party arguing for a different rule.” Courtney, 1 M.J. at 270; see also Marcum, 60 M.J. at 205. The Government recognized that Article 44(e) is contrary to the civilian rule articulated in Crist v. Bretz, 437 U.S. 28, 98 S.Ct. 2156, 57 L.Ed.2d 24 (1978), and therefore has the burden of convincing "this court that the UCMJ rule is necessary because of “certain overriding demands of discipline and duty.” See Courtney, 1 M.J. at 270 (quoting Burns, 346 U.S. at 140, 73 S.Ct. 1045).

Neither a Military Accused’s Chosen Panel Nor a Federal Criminal Defendant’s Chosen Jury Will Necessarily Remain Intact Throughout Trial

The constitutional issue in this case is simply stated: whether the Supreme Court holding in Crist v. Bretz that jeopardy attaches when a jury is empaneled and sworn is applicable to military servicemembers being tried under the UCMJ. The majority finds the Crist decision to be inapplicable to military servicemembers noting that the reason for the Supreme Court’s holding in Crist was to protect “the interest of an accused in retain *178 ing a chosen jury.” United States v. Easton, 71 M.J. 168, 175 (C.A.A.F. 2012) (quoting Crist, 437 U.S. at 35, 98 S.Ct. 2156) (quotation marks omitted). The majority notes that a military judge can excuse a panel member under the UCMJ “for physical disability or other good cause” and the convening authority can excuse a member for “good cause,” and that excused members need not be replaced unless failing to replace them would lose the quorum. Id. at 175-76. As a result, the majority concludes that a military accused’s chosen panel will not necessarily remain intact throughout a trial. Id. at 175-76. From this analysis the majority finds a congressional intent that a military accused would not have the same right to be tried by members of his choosing as does an accused in a civilian criminal trial and that the Crist rule is inapplicable in a military context.[2] Id. at 175-76.
This conclusion initially ignores the broad authority of a federal district judge to excuse jurors in a criminal ease once a trial has commenced.[3] Under Federal Rule of Criminal Procedure (Fed.R.Crim.P.) 24(c), if a juror is excused prior to the time a jury retires to consider a verdict, the juror may be replaced by an alternative juror. However, Fed.R.Crim.P. 23(b)(3) provides that after the jury has retired to deliberate and the court finds it necessary to excuse a juror for good cause, the court may permit a jury of eleven persons to return a verdict. In this regard, there appears to be little difference between the federal rule and UCMJ provisions.
While a court-martial panel may lose more than one member and stay intact (until it falls below a quorum),[4] a federal criminal jury can lose a member and remain intact as well. However, in both systems an accused has the right to participate in the process of selecting original and replacement panel members or jurors. Further, there is nothing in the Congressional Record that reflects any intent on the part of Congress that an accused in the military would not have the same basic constitutional right to retain an original panel as a defendant in federal court has to retain an original jury.[5]
Article 44(c) Was Not Enacted to Address the Demands of Discipline or Duty in the Military
When Article 44 was initially proposed it contained the language found in current subsections (a) and (b), but not the language found in subsection (c). Subsection (a) contains the traditional prohibition against being placed twice in jeopardy. Subsection (b) was added to address the concerns of Congress over the automatic appeal system of the UCMJ. See, e.g., H.R.Rep. No. 81-491, at 23 (1949); Uniform Code of Military Justice: Hearings on H.R. 24-98 Before a Subcomm. of the H. Comm. on Armed Services, 81st Cong. 803 (1949) [House UCMJ Hearings] (statement by Colonel Frederick B. Wiener); Id. at 1048-49 (statement of Felix Larkin). At the time of the adoption of the UCMJ, the *179 general belief was that the Double Jeopardy Clause of the Fifth Amendment allowed rehearings after an appellant successfully appealed a conviction only because in appealing the case, the appellant had waived his double jeopardy rights. See Green v. United States, 355 U.S. 184, 189, 78 S.Ct. 221, 2 L.Ed.2d 199 (1957). Article 44(b) was adopted to ensure that the Double Jeopardy Clause did not prevent a rehearing in a situation where an accused did not initiate the appeal. See S.Rep. No. 81—486, at 19-20 (1949); see also United States v. Ivory, 9 C.M.A. 516, 519-20, 26 C.M.R. 296, 299-300 (1958).
Article 44(c), however, was not a part of the originally proposed UCMJ and was adopted during the congressional hearings in response to the Supreme Court decision in Wade v. Hunter, 336 U.S. 684, 69 S.Ct. 834, 93 L.Ed. 974 (1949).[6] House UCMJ Hearings, at 1047-48 (1949) (statement of Felix Larkin). Wade was a member of the 76th Infantry Division during World War II and had been charged with a rape that occurred in Germany. Wade, 336 U.S. at 685-86, 69 5.Ct. 834. A general court-martial was convened, evidence taken, and the court then closed for deliberation. Id. at 686, 69 S.Ct. 834. Before reaching a decision, however, the Law Member announced that the court-martial would be continued in order to secure the testimony of two additional witnesses. Id. at 686, 69 S.Ct. 834. The convening authority later withdrew the charges and transferred the case to another convening authority as the 76th Division was advancing into Germany and was no longer in the area where the witnesses resided. Id. at 686-87, 69 S.Ct. 834. The charges were later re-referred by a new convening authority and Wade moved to dismiss on the basis of double jeopardy. Id. at 687, 69 S.Ct. 834. The Law Member denied the motion and Wade was convicted. Id. The case eventually made it to the Supreme Court which ruled that double jeopardy did not bar the second trial because the first trial was terminated due to “manifest necessity.” Id. at 688, 690, 69 S.Ct. 834.
Following the Wade decision there was concern that the proposed Article 44 would continue to allow the convening authority to terminate an ongoing trial because the government was not fully prepared. Uniform Code of Military Justice: Hearings on S. 857 and H.R. 4080 Before a Subcomm. of the S. Comm. on Armed Services, 81st Cong. 167-70 (1949) [Senate UCMJ Hearings] (statement of Gen. Franklin Riter). The congressional response to this concern was the adoption of Article 44(e), which was designed to prevent a second prosecution where a court-martial had been convened and evidence had been received, but is later terminated because the government was not fully prepared. House UCMJ Hearings, at 671 (statement of Gen. Franklin Riter); Senate UCMJ Hearings, at 170 (statement of Gen. Franklin Riter).[7]
The importance of this history is that the language of Article 44(c) was adopted not because of any overriding demand for discipline or duty in the military, but rather to protect servicemembers from retrial where the prosecution initiated a trial only to have the convening authority withdraw the charges so the government could gather additional evidence. It also should be noted that, at the time of the enactment of Article 44, the Congressional Record reflects that the drafters were attempting to bring military practice in line with civilian practice.[8]
Twenty-eight years following the enactment of the UCMJ, the Supreme Court decided Crist v. Bretz, where it held, “Today we explicitly hold what Somerville assumed: *180 The federal rule that jeopardy attaches when the jury is empaneled and sworn is an integral part of the constitutional guarantee against double jeopardy.” 437 U.S. 28, 38, 98 S.Ct. 2156, 57 L.Ed.2d 24 (1978) (emphasis supplied). The majority recognizes that the Fifth Amendment protection against double jeopardy applies in both the civilian and military contexts but relegates the point at which jeopardy attaches as a seemingly minor difference. This ignores both the language of the Supreme Court’s holding in Crist and the drafters’ intent that the Double Jeopardy Clause apply in the military in the same manner as it did in civilian courts. Of course, when Professor Morgan stated that intent to the Senate Committee, no one knew that the Fifth Amendment double jeopardy protections attached when the jury is empaneled and sworn. Once the decision in Crist was issued, state and local jurisdictions were required to bring their practices into conformance with the Constitution and in this circumstance there is no reason that the military should not do so as well.
The majority holds that application of the Fifth Amendment attachment of jeopardy to the military is inconsistent with other provisions in the UCMJ. This implies that Article 44(c) was a provision that was carefully integrated and coordinated with the UCMJ provisions that the majority now claims will be inconsistent. However, Article 44(c) was not part of the initial draft of the UCMJ and was drafted to address the Wade situation.[9] In any event, Article 44(c) was clearly not adopted to address any issues of discipline or duty, but was adopted for the increased protection of servicemembers. Any inconsistencies that may exist from application of the Crist rule to the military justice system are easily remedied by Congress or the President, and the fact that there may be inconsistencies does not implicate any overriding discipline or duty concern that would justify withholding Fifth Amendment protections from members of the military.
I would hold that jeopardy attaches in a general court-martial composed of members and presided over by a military judge upon swearing and empaneling the panel.[10] Article 44(c) is therefore unconstitutional as applied to Easton under the facts of this case.

. "A facial challenge to a legislative Act is, of course, the most difficult challenge to mount successfully, since the challenger must establish that no set of circumstances exists under which the Act would be valid.” United States v. Salerno, 481 U.S. 739, 745, 107 S.Ct. 2095, 95 L.Ed.2d 697 (1987). Easton does not specifically argue that Article 44(c), UCMJ, is unconstitutional on its face. Therefore, I see no reason to address the statute's facial validity.

. I agree with the majority that " '[judicial deference ... is at its apogee’ when the authority of Congress to govern the land and naval forces is challenged." United States v. Easton, 71 M.J. 168, 176 n. 12 (C.A.A.F. 2012) (alterations in original) (citations omitted). However, as broad as Congress's discretion may be, it is not "free to disregard the Constitution when it acts in the area of military affairs.” United States v. Graf, 35 M.J. 450, 461 (C.M.A.1992) (quoting Rostker v. Goldberg, 453 U.S. 57, 67, 101 S.Ct. 2646, 69 L.Ed.2d 478 (1981)).

. Reasons for excusing jurors in federal trials have included: illness, travel plans, family emergency, medical emergencies, emotional instability, and religious holidays. See Murray v. Laborers Union Local No. 324, 55 F.3d 1445 (9th Cir.1995); see also United States v. Longwell, 410 Fed.Appx. 684 (4th Cir.2011); United States v. McFarland, 34 F.3d 1508 (9th Cir.1994); United States v. Huntress, 956 F.2d 1309 (5th Cir.1992); United States v. Wilson, 894 F.2d 1245 (11th Cir.1990); United States v. O’Brien, 898 F.2d 983 (5th Cir.1990).

. Articles 25 and 29, UCMJ, 10 U.S.C. § 825, 829 (2006); Rule for Courts-Martial 903(a)(1).

. The majority’s attempt in footnote 10 to bolster its interpretation of congressional intent by distinguishing between Fed.R.Crim.P. 24(c)(2)(A) and Article 29(b)-(c), UCMJ, is unavailing as it appears to overlook both the Fed.R.Crim.P. 23(b)(3) and the requirements of Articles 25, 41, and 42 as those articles would apply to additional members detailed to the panel when it drops below quorum.

. Wade v. Hunter is also significant as it clarified that the Fifth Amendment applied to courts-martial. Id. at 690, 69 S.Ct. 834.

. For an excellent discussion of double jeopardy issues in the military justice system, see Daniel J. Everett, Double, Double Toil and Trouble: An Invitation for Regaining Double Jeopardy Symmetry in Courts-Martial, Army Lawyer, Apr. 2011, at 6.

.Professor Edmund Morris Morgan, chair of the drafting committee informed the Senate Committee that "I really am just as anxious as you Senators are to have the double jeopardy clause apply, and apply the way it does in civil courts.” Senate UCMJ Hearings, at 325.

. See supra pp. 171-72.

. Court member panels, like their civilian counterparts, take two oaths. The first for the purposes of voir dire and the second to execute their duty as a panel. Unlike civilian juries, however, court member panels swear to both oaths at the same time in one combined oath, prior to voir dire. In contrast, civilian juries swear an oath for purposes of voir dire, then swear a second oath (and become empaneled) just prior to opening statements. The military practice of a combined oath is merely for "administrative convenience.” See Manual for Courts-Martial, United States, Analysis of the Rules for Courts-Martial app. 21 at A21-49 (2008 ed.). As this difference is simply for administrative convenience, it does not warrant a separate rule.